(No. 106736.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. WILLIE McLAURIN, Appellee.

*Opinion filed December 17, 2009.*

480

Lisa Madigan, Attorney General, of Springfield, and Richard A. Devine and Anita Alvarez, State's Attorneys, of Chicago (James E. Fitzgerald, Ashley Romito, Michelle Katz, Allison A. Brunell Sise, Annette Collins and Alan J. Spellberg, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, State Appellate Defender, Patricia Unsinn, Deputy Defender, and Manuel S. Serritos, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Thomas, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.

Justice Freeman specially concurred, with opinion.

## OPINION

Following a jury trial in the circuit court of Cook County, defendant was convicted of aggravated unlawful use of weapon and unlawful use of weapon by a felon and sentenced to six years' imprisonment. The appellate court reversed defendant's conviction and remanded for a new trial, finding that plain error occurred when: (1) defendant was not personally present during jury deliberations when several notes from the jury were discussed; and (2) the trial court sent a bailiff into the jury room to direct the jury to continue their deliberations. We reverse the appellate court's judgment and affirm defendant's conviction.

### BACKGROUND

Chicago police officers John O'Carroll and Edward Langle were patrolling in the early morning of August 17, 2004, when they observed a Chevrolet Caprice driving east on 15th Street. Neither the driver nor the front seat passenger was wearing a seat belt, so the officers pulled the vehicle over. According to the officers' testimony at trial, the backseat passenger, later identified as Willie McLaurin, the defendant, was moving around furtively while the officers ran the license plate of the stopped car. Becoming suspicious, Officers O'Carroll and Langle got out of the squad car and approached the Caprice with their weapons drawn. As they approached, defendant jumped out of the backseat and began to run away. Officer O'Carroll called for assistance

and chased after defendant, while Officer Langle stayed with the driver and front seat passenger.

According to Officer O'Carroll, as defendant was running east along 15th Street, defendant pulled a gun from somewhere in front of him and threw it under a nearby parked van. Officer O'Carroll continued to chase defendant, catching up with him a short distance later as defendant neared a second patrol car. Officer Demarko Daily had responded to Officer O'Carroll's call for assistance, and Officers Daily and O'Carroll handcuffed defendant and placed him in Officer Daily's squad car. Officer O'Carroll then walked back along the route that defendant had run, and he retrieved a handgun from underneath the parked van.

At defendant's trial, the State presented the testimony of Officer O'Carroll, as well as that of Officers Langle and Daily. Although only Officer O'Carroll saw defendant holding or throwing away the handgun, Officers Langle and Daily testified that they saw Officer O'Carroll chasing defendant, and Officer Daily heard Officer O'Carroll yell "gun" as he retrieved the weapon from under the parked van. In addition to the testimony of the three officers, the State provided the handgun itself as evidence at trial. Defendant also stipulated, outside the presence of the jury, that he had been previously convicted of a felony.

In his defense, defendant presented the testimony of Arlena Jones, the front seat passenger of the Caprice. According to Jones, defendant never ran from the stopped car. Instead, the officers approached the car and, upon finding that defendant was the only person in the car with a driver's license, ordered everyone out of the car. Jones testified that the officers then searched the car and found the handgun, which she claimed belonged to the driver of the car, Jackine Austin. Outside the presence of the jury, Austin testified that if he were called as

a witness, he would invoke his fifth amendment right against self-incrimination. The defense also offered a stipulation by the State that Officers O'Carroll and Langle first "indicated to dispatch" that they were stopping the Caprice at 2:27 a.m., and the officers first made reference to a gun at 2:58 a.m. Defendant did not testify.

After the case was submitted to the jury, the jury sent out five notes. The trial court held discussions about these notes in chambers with trial counsel, but no court reporter was present. At the request of defendant's appellate counsel, the assistant State's Attorney and defendant's trial counsel prepared an "Agreed Statement of Facts" pertaining to those proceedings. In relevant part, the "Agreed Statement of Facts" provides:

"1. The following persons were present for the discussions held before the Honorable James M. Schreier: Assistant Public Defender Kathryn Maloney (Vahey), Assistant State's Attorneys James V. Murphy and Michael Yoon. Defendant was not present for any of the discussions. Furthermore, discussions of jury notes were not held in open court, they were held in chambers. [Also present was Assistant Public Defender Brian Barrido.]

2. *Jury Note #1:* On February 4, 2005, at or about 1:55 p.m., the jury *** requested the exact wording of a stipulation and 'Officer Daley's [*sic*] testimony as to why he was on Longdale headed north.' ***

*Response to Jury Note #1:* 2:15 p.m., a copy of the stipulation and transcript of Officer Daley's [*sic*] *** testimony was sent back to jury.

3. *Jury Note #2:* On February 4, 2005, at or about 3:00 p.m., the jury *** stated 'We are deadlocked 8-4 and it appears that no one is willing to change their mind.' ***

*Response to Jury Note #2:* After Judge Schreier gave parties an opportunity for suggestions, Judge Schreier responded in writing 'Keep on deliberating with an open mind.['] ***

4. *Jury Note #3:* *** [A]t or about 3:50 p.m., the jury *** stated 'We are deadlocked 7-5 , based on the evidence presented, this jury feels it cannot a [*sic*] decision in this case.' ***

Prior to any response to Jury Note #3 being returned to the jury, Jury Note #4 was received by the Court.

*Jury Note #4:* \*\*\* [A]t or about 4:35 p.m., the jury in the above named case stated 'We are deadlocked still at 7-5, based on the evidence presented, this jury does not feel it can reach a decision.' \*\*\*

*Response to Jury Notes #3 and #4.* There was no written response. Judge Schreier requested his bailiff to inform the jury to keep on deliberating.

5. *Jury Note #5:* \*\*\* [A]t or about 4:35 p.m., the jury \*\*\* requested the testimony of Officer O'Carroll[.] \*\*\*

*Response to Jury Note #5.* The jury was provided with a copy of Officer O'Carroll's testimony.

6. On February 4, 2005, at or about 5:25 p.m., the McLaurin jury returned with its [guilty] verdict."

The jury found defendant guilty of aggravated unlawful use of weapon and unlawful use of weapon by a felon. The trial court entered judgment on the verdict on the charge of unlawful use of a weapon by a felon and sentenced defendant to six years of imprisonment. Defendant filed a motion for a new trial, arguing that the State failed to prove defendant guilty beyond a reasonable doubt, the verdict was against the weight of the evidence, his due process and equal protection rights were violated, and the court erred in denying his motions for directed verdict. The court denied the motion.

A divided appellate court reversed. 382 Ill. App. 3d 644, 657. The majority found that defendant's constitutional rights were violated when: (1) the trial court held *in camera* discussions with counsel for the defense and the prosecution but without defendant personally present; and (2) the trial court instructed the bailiff to speak directly with the jury following the third and fourth notes. Although the court noted that defendant had forfeited review of these issues, it granted defendant's request to review the alleged errors under a plain-error analysis. The dissent argued that the forfeiture rule should not apply where the basis for the alleged er-

ror was the trial judge's conduct, but regardless of whether the issues were considered forfeited, defendant was not entitled to a new trial. 382 Ill. App. 3d at 658 (Murphy, J., dissenting).

## ANALYSIS

Initially, we note that to preserve a claim of error for review, counsel must object to the error at trial and raise the error in a motion for a new trial before the trial court. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defense counsel in this case did neither, and therefore defendant has forfeited appellate review of these claims. See *Enoch*, 122 Ill. 2d at 185-86. Defendant concedes the procedural default, but urges us to relax the forfeiture rule and nonetheless grant review of his claims. In the alternative, defendant argues that the errors he alleges warrant a new trial under the plain-error rule. Our review of the legal issues in this case is *de novo*. See *People v. Bracey*, 213 Ill. 2d 265, 270 (2004).

### Relaxation of the Forfeiture Rule

Defendant first argues that we should relax the forfeiture rule in this case and consider his claims as though they had been properly preserved. Defendant relies on *People v. Kliner*, 185 Ill. 2d 81, 161 (1998), in which this court observed that although "[i]t is well settled that both an objection at trial and a written post-trial motion raising the issue are necessary to preserve an alleged error for review[,] *** we have determined that application of the waiver rule is less rigid where the basis for the objection is the trial judge's conduct." *Kliner*, 185 Ill. 2d at 161. However, we find the narrow principle relied on in *Kliner* inapplicable here.

This court first recognized that judicial misconduct could provide a basis for relaxing the forfeiture rule in *People v. Sprinkle*, 27 Ill. 2d 398 (1963). In *Sprinkle*, the trial court conducted witness examinations during the

defendant's jury trial and used several questions to imply its own opinions of the case and the witnesses, but defense counsel did not object. *Sprinkle*, 27 Ill. 2d at 400-03. This court nonetheless granted review of the defendant's claims, explaining:

"The making of an objection to questions or comments by a judge poses a practical problem for the trial lawyer. It can prove embarrassing to the lawyer, but, more importantly, assuming that most juries view most judges with some degree of respect, and accord to them a knowledge of law somewhat superior to that of the attorneys practicing before the judge, the lawyer who objects to a comment or question by the judge may find himself viewed with considerable suspicion and skepticism by the very group whom he is trying to convert to his client's view of the facts, thereby perhaps irreparably damaging his client's interests. If he fails to object, he may, on appeal, be faced, as defendant here is, with the claim that his failure to act has precluded consideration of the error, and it is not always a sufficient answer to this situation to say that the objection can be made and ruling secured outside the hearing of the jury. It is particularly incumbent upon the trial judge to exercise a higher degree of care in his comments regarding, or interrogations of, witnesses before a jury in order to avoid influencing the jurors to any extent, and we therefore hold that a less rigid application of the rule requiring timely and proper objection and preservation of rulings thereon should prevail where the basis for the objection is the conduct of the trial judge than is otherwise required." *Sprinkle*, 27 Ill. 2d at 400-01.

In subsequent cases, the court continued to acknowledge the difficult position in which trial counsel is placed when the trial judge oversteps his or her authority in front of a jury by relaxing or ignoring the forfeiture rule in such cases. See *People v. Tyner*, 30 Ill. 2d 101, 105 (1964) (reviewing racially derogatory and biased remarks made by the trial judge while questioning the defendant); *People v. Barrow*, 133 Ill. 2d 226, 260 (1989) (reviewing trial judge's allegedly improper remarks to the jury dur-

ing jury selection); *People v. Nevitt*, 135 Ill. 2d 423, 455 (1990) (reviewing trial court's comments and rulings allegedly demonstrating bias against the defendant); *People v. Sims*, 192 Ill. 2d 592 (2000) (reviewing trial judge's expression of sympathy to victim's grandmother); *People v. Woolley*, 205 Ill. 2d 296, 301-02 (2002) (reviewing trial judge's comments to venire at the defendant's retrial about the death sentence imposed after the first trial).

As the appellate court has noted, our review of unpreserved claims of error under *Sprinkle* closely resembles our review of plain errors that are so serious that they threaten the integrity of the judicial process. *People v. Westpfahl*, 295 Ill. App. 3d 327, 330 (1998); *People v. Kelley*, 113 Ill. App. 3d 761, 766 (1983). Like the plain-error doctrine, the *Sprinkle* principle is primarily concerned with ensuring a fair trial.[1] *Woolley*, 205 Ill. 2d at 301, citing *Sprinkle*, 27 Ill. 2d at 400. Therefore, although *Sprinkle* was primarily concerned with the risk of alienating the jury by appearing disrespectful of the court's authority, this court has occasionally applied the *Sprinkle* principle even where no jury is present. See *People v. Dameron*, 196 Ill. 2d 156, 171 (2001) (reviewing trial judge's reliance, in sentencing defendant to death, on a book that was not in evidence); *People v. Davis*, 185 Ill. 2d 317, 344 (1998) (reviewing trial judge's alleged refusal to consider mitigating evidence in capital sentencing hearing); *People v. Williams*, 173 Ill. 2d 48, 85 (1996) (reviewing trial judge's alleged refusal to allow defense counsel to participate in formulating responses to jury notes). In so doing, we have implicitly recognized that in

---

[1]Despite the similarities between the *Sprinkle* doctrine and plain-error analysis, we note that when the *Sprinkle* doctrine is appropriately applied, our substantive review is indistinguishable from a review of preserved error. Accordingly, a defendant who successfully invokes *Sprinkle* is not limited in the same ways as a defendant relying solely on plain-error review.

some extraordinary circumstances, an objection "would have fallen on deaf ears." *People v. Davis*, 378 Ill. App. 3d 1, 10 (2007); see also *People v. Saldivar*, 113 Ill. 2d 256, 266 (1986) (reviewing trial judge's consideration of allegedly improper factors in aggravation during sentencing and noting that "[t]o preserve any error of the court made at that time, it was not necessary for counsel to interrupt the judge and point out that he was considering wrong factors in aggravation").

We stress, however, that trial counsel has an obligation to raise contemporaneous objections and to properly preserve those objections for review. Failure to raise claims of error before the trial court denies the court the opportunity to correct the error immediately and grant a new trial if one is warranted, wasting time and judicial resources. *Enoch*, 122 Ill. 2d at 185-87, citing *People v. Caballero*, 102 Ill. 2d 23, 31-32 (1984). This failure can be excused only under extraordinary circumstances, such as when a trial judge makes inappropriate remarks to a jury (*Woolley*, 205 Ill. 2d at 301-02) or relies on social commentary, rather than evidence, in sentencing a defendant to death (*Dameron*, 196 Ill. 2d at 171). That we have seldom applied *Sprinkle* to noncapital cases further underscores the importance of uniform application of the forfeiture rule except in the most compelling of situations.

Defendant argues that, as in the cases noted above, the error he raises in this case is attributable to the "trial judge's conduct." However, defendant does not claim that the trial court overstepped its authority in the presence of the jury, nor does he make any argument that his counsel was practically prevented from objecting to the court's handling of the jury notes. In fact, the record indicates that counsel was present during the jury note conferences, and it suggests no basis on which we could conclude that counsel's objection would have "fallen on deaf ears."

*Kliner*, on which defendant relies, is distinguishable. In *Kliner*, the trial court handled at least six jury notes, including requests for evidence and factual inquiries, without notifying or consulting defense counsel. *Kliner*, 185 Ill. 2d at 160-61. Because the court failed to notify defense counsel of the notes, counsel could not possibly have raised a contemporaneous objection. In the present case, however, defense counsel was present and had every opportunity to raise an objection before the trial court. Defendant has not presented any extraordinary or compelling reason to relax the forfeiture rule in this case, and we decline to do so.

## Plain Error

Because we find no reason to relax the forfeiture rule in this case, we next consider defendant's contention that his claims should be reviewed as plain error. The plain-error doctrine allows a reviewing court to remedy a "clear or obvious error" in two circumstances, regardless of the defendant's forfeiture: (1) where the evidence in the case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence; or (2) where the error is so serious that the defendant was denied a substantial right, and thus a fair trial. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007); *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005) (citing *People v. Mullen*, 141 Ill. 2d 394, 402 (1990), and *People v. Keene*, 169 Ill. 2d 1, 17 (1995)). In this case, the appellate court found that the evidence was closely balanced and that "[t]he cumulative effect of the trial court's violations of [defendant's] constitutional rights was so serious that it affected the fairness of his trial and implicates the second prong of the plain error rule." 382 Ill. App. 3d at 653-54. Before addressing either of these prongs of the plain-error doctrine, however, we must determine whether a "clear or obvious" error occurred at all. *Piatkowski*, 225 Ill. 2d at 565.

Defendant points to two actions of the trial court as clear or obvious error. First, defendant alleges that his "right to be present" was violated when the trial court held conferences to discuss the jury notes without defendant personally present. Second, defendant argues that he was denied a fair trial by the trial court's decision to send the bailiff into the jury room in lieu of a written response.

### Right of Presence

Defendant argues that both his state and federal rights of presence were violated when he was excluded from the discussions of the jury notes. In *People v. Bean*, 137 Ill. 2d 65 (1990), this court discussed at length the right of presence under both Illinois and federal law, and *Bean* is instructive in this case. In *Bean*, the trial court conducted an *in camera voir dire* of six venire members. *Bean*, 137 Ill. 2d at 78-80. The defendant's two attorneys were present during each *voir dire*, but the defendant himself was not present. *Bean*, 137 Ill. 2d at 79. As in the present case, the *Bean* defendant claimed the *in camera* proceedings violated his rights under both the Illinois Constitution and the United States Constitution. *Bean*, 137 Ill. 2d at 78-79. The defendant in *Bean* also failed to preserve his claim, and therefore the court reviewed the record only for plain error. *Bean*, 137 Ill. 2d at 80.

The *Bean* court began its discussion with the right of presence in Illinois, noting that although criminal defendants have a "general right to be present" at every stage of the trial, "the broad 'right to be present at trial' is not itself a substantial right under the Illinois Constitution." *Bean*, 137 Ill. 2d at 80-81, citing *People v. Martine*, 106 Ill. 2d 429, 439 (1985). Instead, it is a "lesser right the observance of which is a means to securing the substantial rights of a defendant." *Bean*, 137 Ill. 2d at 81. Therefore, the court held, a defendant's right of

presence is violated under Illinois law only when the defendant's absence results in the denial of an underlying substantial right, such as the right to confront witnesses, the right to present a defense, or the right to an impartial jury; similarly, "it is only in such a case that plain error is committed." *Bean*, 137 Ill. 2d at 81. The court emphasized that there is no absolute, inflexible right of presence in Illinois, and it concluded that, because the defendant's absence "did not, in fact, have the slightest effect on" the defendant's substantive rights, no plain error occurred on those grounds. *Bean*, 137 Ill. 2d at 81-82.

The same conclusion applies in the present case. Here, defendant has pointed to no substantive right that was impaired by the trial court's decision to proceed in his absence, and we find no such right was impaired. Defendant was not absent from the questioning of witnesses or the presentation of his case to the jury, and he was not deprived of his right to confront witnesses or his right to present a defense. Nor was he denied his right to a fair jury. Although defendant argues that he could have given input into the trial court's answers to the jury notes, it is significant that he does not argue that the substance of any of the responses was improper. The agreed statement of facts shows that the jury notes were all either straightforward requests for portions of testimony or notes claiming that the jury was "deadlocked." The trial court apparently provided all requested testimony, and we note that the decision of whether to provide transcripts to the jury "rests within the sound discretion of the trial court." *Kliner*, 185 Ill. 2d at 163, citing *People v. Williams*, 173 Ill. 2d 48, 87 (1996). Similarly, the trial court has broad discretion when responding to a jury that claims to be deadlocked, although any response should be clear, simple, and not coercive. See *People v. Gregory*, 184 Ill. App. 3d 676, 681

(1989); *People v. Prim*, 53 Ill. 2d 62, 74-77 (1972). The court's responses here to "keep on deliberating with an open mind" and "keep on deliberating" were proper, and therefore defendant was not denied any underlying substantial right by his absence from chambers while the court was formulating them.

Defendant also urges us to find that his federal right of presence was violated when the court proceeded in his absence. As with the Illinois right of presence, the federal "right of presence" is not itself an express constitutional right. *Bean*, 137 Ill. 2d at 82-83, citing *Kentucky v. Stincer*, 482 U.S. 730, 745, 96 L. Ed. 2d 631, 647, 107 S. Ct. 2658, 2667 (1987). Instead, a criminal defendant has a right to be present when his presence is necessary to secure another express constitutional right, such as the sixth amendment right to confront witnesses (see, *e.g.*, *Illinois v. Allen*, 397 U.S. 337, 338, 25 L. Ed. 2d 353, 356, 90 S. Ct. 1057, 1058 (1970)), or the fourteenth amendment right to due process (see, *e.g.*, *Stincer*, 482 U.S. at 745, 96 L. Ed. 2d at 647, 107 S. Ct. at 2667). In this case, defendant alleges only that his right of presence under the fourteenth amendment was abridged.[2] As the *Bean* court explained, the right of presence under the fourteenth amendment is "contained within the scope of due process," and the right is violated only when a defendant's absence results in his being denied a fair trial. *Bean*, 137 Ill. 2d at 82. The fairness of the trial, moreover, must be determined " 'in light of the whole record' "; if it does not appear that defendant's absence resulted in

---

[2] When it concluded that the trial court had violated defendant's "substantial constitutional rights protected by the federal and state constitutions," the appellate court did not specify which federal constitutional right had been denied defendant. 382 Ill. App. 3d at 653. Although the court cited only the sixth amendment, defendant acknowledges in his brief before this court that his federal claim rests on the fourteenth amendment right of due process and not the sixth amendment right of confrontation.

an unfair trial, then his constitutional rights were not violated. *Bean*, 137 Ill. 2d at 84, quoting *Snyder v. Massachusetts*, 291 U.S. 97, 115, 78 L. Ed. 674, 683, 54 S. Ct. 330, 336 (1934). Particularly important in this case is *Bean*'s emphasis that this result applies "even if a defendant's absence in similar circumstances is usually considered to be improper." *Bean*, 137 Ill. 2d at 83.

In light of the record as a whole, we find that defendant was not denied a fair trial by his absence from the jury note conferences. Defendant claims that, had he been present personally, he could have urged his counsel to respond to the jury's notes by (1) objecting that providing transcripts of police testimony would allow the jury to afford too much weight to that testimony; or (2) urging the trial court to give a supplemental instruction to the jury when it appeared that the jury was deadlocked. Defendant's claim that he would have urged a different course of action than that which his counsel pursued is unpersuasive, particularly in light of defendant's argument at trial that the police fabricated their stories, a claim that largely relied on the inconsistent details of the officers' testimonies. However, even if we assume that defendant would have urged his counsel to object or to offer a supplemental instruction and that counsel would have been persuaded to do so, the answers to the jury's notes would still have been within the sound discretion of the trial court.

As we have already explained, both the provision of transcripts to the jury and the formulation of a response to a claim of deadlock are within the court's discretion, as is the determination of when a supplemental instruction to the jury is appropriate. *People v. Cowan*, 105 Ill. 2d 324, 328 (1985); *People v. Preston*, 76 Ill. 2d 274, 283-84 (1979). The trial court in this case did not abuse that discretion, and as a result we find that defendant's absence did not result in his being denied a fair trial.

Defendant relies primarily on two cases, *People v. Childs*, 159 Ill. 2d 217 (1994), and *People v. McDonald*, 168 Ill. 2d 420 (1995), to support his assertion that his absence alone violated his constitutional rights. In *Childs*, the jury sent a question of law to the trial court during deliberations. *Childs*, 159 Ill. 2d at 225-26. The trial judge, who was reached by telephone while having dinner with the assistant State's Attorneys who had prosecuted the case, verbally instructed his bailiff to respond, "You have received your instructions as to the law, read them and continue to deliberate." *Childs*, 159 Ill. 2d at 225. The court did not notify defense counsel or the prosecutors of the note or the response until after the response had been given. *Childs*, 159 Ill. 2d at 225. In *McDonald*, the defendant was representing himself at his death penalty sentencing hearing with the assistance of standby counsel. *McDonald*, 168 Ill. 2d at 458. The jury sent out a note containing two questions about the jury instructions, and the trial court informed the State's Attorney and the defendant's standby counsel but did not inform the defendant. *McDonald*, 168 Ill. 2d at 458. The court replied in writing: "You have the instructions! Continue to *deliberate*." (Emphasis in original.) *McDonald*, 168 Ill. 2d at 458. In both *Childs* and *McDonald*, this court asserted that "[a] criminal defendant has a constitutional right to a public trial, and to appear and participate in person and by counsel at all proceedings which involve his substantial rights." *Childs*, 159 Ill. 2d at 227; *McDonald*, 168 Ill. 2d at 459.

Initially, we note that neither *Childs* nor *McDonald* presents a factual situation like that in the present case, where defendant's counsel was present when the court considered the jury's notes; although the defendant's standby counsel was present in *McDonald*, the person actually representing the defendant was absent in both cases. Moreover, despite the broad statements cited

above, the court in both *Childs* and *McDonald* held that the defendant was not entitled to a new trial as a result of the errors unless he had suffered actual prejudice. *Childs*, 159 Ill. 2d at 227-35 ("a jury verdict will not be set aside where it is apparent that no injury or prejudice resulted"); *McDonald*, 168 Ill. 2d at 460-61 ("the issue now becomes whether defendant suffered any prejudice"). Defendant acknowledges the requirement of prejudice in *Childs* and *McDonald*, but he argues that the burden is on the State to prove beyond a reasonable doubt that no prejudice occurred. This argument ignores the crucial difference between an error a defendant has properly preserved for review and one which the defendant has forfeited. As we explained in *Herron*, where the defendant has made a timely objection and properly preserved an error for review, the reviewing court conducts a harmless-error analysis in which the State has the burden of persuasion with respect to prejudice. *Herron*, 215 Ill. 2d at 181. However, where the defendant fails to make a timely objection and therefore forfeits review, the reviewing court will examine the record only for plain error. In a plain-error review, the burden of persuasion remains on the defendant. *Herron*, 215 Ill. 2d at 182. The defendants in both *Childs* and *McDonald* objected as soon as they were informed that the trial courts had acted without notifying defense counsel. *Childs*, 159 Ill. 2d at 225; *McDonald*, 168 Ill. 2d at 458. Therefore both defendants properly preserved their claims for review, and this court applied a harmless-error analysis, placing the burden on the State.[3] As we have

[3]In addition to the cases cited by defendant, the appellate court in this case relied on *Kliner* to find that harmless-error analysis was appropriate. 382 Ill. App. 3d at 654. However, the court in *Kliner* used the *Sprinkle* rationale to avoid the defendant's forfeiture. *Kliner*, 185 Ill. 2d at 161. The harmless-error analysis in that case was therefore appropriate.

discussed, however, defendant in the present case did not properly preserve his objections. Because he has forfeited his claims, we review them only for plain error, and the burden of persuasion remains on defendant to show prejudice. He has not done so. Because defendant was denied neither a fair trial nor any other substantive right, we hold that his right of presence was not violated.

### Interference With the Jury

Defendant also argues that the trial court committed a clear and obvious error when it sent a bailiff into the jury room to deliver the court's message to "keep on deliberating." According to the agreed statement of facts, the jury sent two notes within approximately 45 minutes claiming that it was deadlocked and could not reach a decision; these were the second and third such notes sent by the jury. Rather than give a written response, the court sent the bailiff to tell the jury to "keep on deliberating"; a message consistent with the court's written response to the jury's first "deadlock" note.

Defendant's argument relies on *Remmer v. United States*, 347 U.S. 227, 98 L. Ed. 654, 74 S. Ct. 450 (1954), in which the Supreme Court held:

> "In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties." *Remmer*, 347 U.S. at 229, 98 L. Ed. at 656, 74 S. Ct. at 451.

The Court went on to note that the presumption of prejudice is not conclusive, but that the burden rests on the state to establish that any outside contact with the jury was harmless to the defendant. *Remmer*, 347 U.S. at 229, 98 L. Ed. at 656, 74 S. Ct. at 451. Defendant also points to two cases in which the Seventh Circuit Court of Appeals, relying on *Remmer*, has found that a bailiff's

intrusion into the jury room during deliberations was reversible error (*Moore v. Knight*, 368 F.3d 936 (7th Cir. 2004); *United States ex rel. Tobe v. Bensinger*, 492 F.2d 232 (7th Cir. 1974)).

We have previously noted the similarity between our plain-error analysis and the parallel analysis under the federal rules (*Herron*, 215 Ill. 2d at 184-87), and we note that the federal analysis, like our own, places the burden of persuasion squarely on the defendant (*Herron*, 215 Ill. 2d at 187; *United States v. Olano*, 507 U.S. 725, 741, 123 L. Ed. 2d 508, 524, 113 S. Ct. 1770, 1781 (1993)). Unlike defendant in the case at bar, the defendant in *Remmer* properly preserved the error for review. *Remmer*, 347 U.S. at 229, 98 L. Ed. at 656, 74 S. Ct. at 451. The Supreme Court later applied *Remmer* to a plain-error analysis in *Olano*, 507 U.S. at 741, 123 L. Ed. 2d at 524, 113 S. Ct. at 1781. In that case, the Court held that, despite the broad language in *Remmer*, "a presumption of prejudice *** does not change the ultimate inquiry: Did the intrusion affect the jury's deliberations and thereby its verdict?" *Olano*, 507 U.S. at 739, 123 L. Ed. 2d at 522, 113 S. Ct. at 1780. Contrary to defendant's assertion that the State bears the burden to prove that no prejudice occurred, the Court in *Olano* also found that the burden of demonstrating prejudice was on the defendants, noting, "This is a plain-error case, and it is [the defendants] who must persuade the appellate court that the [intrusion] *** was prejudicial." *Olano*, 507 U.S. at 741, 123 L. Ed. 2d at 524, 113 S. Ct. at 1781.

Our cases have also emphasized that the key question in determining whether an "intrusion" into the jury room constitutes error is whether the defendant was prejudiced by the intrusion. See *People v. Mitchell*, 152 Ill. 2d 274, 341 (1992) (" 'A verdict will not be set aside where it is obvious that no prejudice resulted from a communication to the jury, either by the court or by third

persons outside the presence of the defendant' "), quoting *People v. Harris*, 123 Ill. 2d 113, 132-33 (1988). As we have already explained, the burden of persuasion in a plain-error analysis under our law rests on the defendant. *Herron*, 215 Ill. 2d at 182. We therefore see no reason to depart from the reasoning of *Olano* in determining whether defendant has met his burden of establishing a clear or obvious error.

Defendant urges us to find that the bailiff's communication with the jury in this case, however brief, was presumptively prejudicial and therefore a clear or obvious error. However, defendant has not alleged any specific prejudice that resulted or could have resulted from the bailiff's instruction to the jury to "keep on deliberating." Defendant argues that the temporal proximity between the bailiff's "intrusion" and the jury's ultimate verdict of guilty demonstrates prejudice. Such a conclusion relies on speculation about the jury's process and motives, and it ignores the jury's subsequent request for the transcript of the State's key witness, Officer O'Carroll, which was granted. Absent any evidence or even a good-faith allegation that the bailiff actually acted improperly and did more than follow the court's simple instructions, we will not presume that a sworn officer of the court engaged in misconduct.

*Moore* and *Tobe*, relied on by defendant, are distinguishable. First, both *Moore* and *Tobe* presented claims of error that were properly preserved; neither was a plain-error case. *Moore*, 368 F.3d at 938; *Tobe*, 492 F.2d at 234. Second, the bailiffs' comments to the juries in both cases were not limited to the simple "keep on deliberating" instruction at issue in this case. Instead, the comments in both cases were coercive and improper. The bailiff in *Moore* told the jury that its factual and legal questions could not be answered and that no further questions would be allowed. *Moore*, 368 F.3d at 941-42.

In *Tobe*, the bailiff answered legal questions and told the jury repeatedly "You must reach a unanimous verdict" and "You'll have to stay in there until you come up with a decision" when members of the jury expressed doubt about their ability to reach a decision. *Tobe*, 492 F.2d at 234-35. Finally, the defendants in *Moore* and *Tobe* both alleged specific ways in which the bailiffs' comments created prejudice against them. The *Moore* defendant argued that the bailiff's response that the jury's questions about the substance of the defendant's alibi "could not be answered" implied that the defendant had not provided the answers and that there were holes in the defendant's alibi. *Moore*, 368 F.3d at 941. The *Tobe* defendant provided the court with evidence that jurors in that case had signed verdicts with which they did not agree because of the bailiff's improper statements. *Tobe*, 492 F.2d at 237. Defendant in the present case has alleged nothing more than generalities to support his claim that the bailiff's communication with the jury prejudiced him.

### Ineffective Assistance of Counsel

Finally, defendant argues that his trial counsel was ineffective for failing to object to his absence from the jury note conferences or to the bailiff's communication with the jury. Because we find that neither of these occurrences prejudiced defendant, defendant's counsel was not ineffective for failing to object to them.

### CONCLUSION

For the reasons we have discussed, we reverse the judgment of the appellate court and affirm defendant's conviction.

> *Appellate court judgment reversed;*
> *circuit court judgment affirmed.*

JUSTICE FREEMAN, specially concurring:

In this appeal, defendant argues that (1) he was entitled to be present when several notes from the jury

were discussed by the trial judge, the prosecutor, and defense counsel; and (2) the trial judge improperly sent a deputy sheriff into the jury room to direct the jury to continue deliberations. The problem with these arguments is that defendant never raised them in the circuit court, as he was required to do in order to preserve the issues for appellate review. *People v. Enoch*, 122 Ill. 2d 176, 186-87 (1988); *People v. Reed*, 177 Ill. 2d 389, 393-94 (1997). Defendant acknowledges that he has forfeited the opportunity to raise the issues, but he contends that we may excuse his forfeiture. He argues that his lawyer was ineffective for failing to raise the points before the trial judge. He argues that his forfeiture can be excused as plain error. He also argues that this court should excuse the forfeiture because the points involve the conduct of the trial judge. I disagree with how the court ultimately rejects defendant's arguments. I agree that the circuit court's judgment must be affirmed, but the reason to do so rests with rejection of defendant's ineffective assistance of counsel claims, not the analysis that the majority offers.

The failure to raise issues in the trial court denies that court the chance to correct argued errors and grant relief, if warranted. See *People v. Caballero*, 102 Ill. 2d 23, 31-32 (1984). The requirement of a written postsentencing motion allows "the trial court the opportunity to review a defendant's contention of sentencing error and save the delay and expense inherent in appeal if they are meritorious." *People v. Reed*, 177 Ill. 2d 389, 394 (1997). In so doing, it "gives the appellate court the benefit of the trial court's reasoned judgment on those issues." *Reed*, 177 Ill. 2d at 394. For these reasons, when a claim is not presented in the trial court, it is forfeited, or more precisely, procedurally defaulted, on appeal.

Historically, amelioration of the perceived harsh effect of the forfeiture rule owed, in large part, to inad-

equate representation at trial, as both this court and commentators have recognized. See *People v. Gardiner*, 303 Ill. 204, 206-07 (1922) (noting that "where the evidence is close *** and it is clear that the prosecuting attorney has taken advantage of the accused because he was poorly represented and the trial court has permitted such advantage to be taken, then we will consider the errors notwithstanding the failure to properly preserve the questions for review"); *People v. Nowak*, 372 Ill. 381, 382 (1939) (holding that where the case is close, the court "will consider errors in the record notwithstanding the failure of counsel to save the questions for review, where it is clear that the court has permitted the prosecuting attorney to take advantage of the accused because he was poorly represented"); see also 21 C. Wright & K. Graham, Federal Practice & Procedure §5043 (1977) (observing that the original basis for the adoption of exceptions to the forfeiture doctrine, such as plain error, was the desire to protect criminal defendants from inadequate representation).

That justification for excusing procedural default, however, was entirely subsumed by the recognition of the sixth amendment right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 80 L. Ed. 2d 674, 692, 104 S. Ct. 2052, 2063 (1984). An ineffective assistance of counsel claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable and fair. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 697, 104 S. Ct. at 2068. Thus, when a defendant raises a meritorious sixth amendment claim, the considerations of finality that underscore the procedural default doctrine (see *Enoch*, 122 Ill. 2d at 190) provide an insufficient basis to compromise the constitutional protections afforded a defendant at trial by the sixth amendment.

Under *Strickland*, claims of ineffective assistance of counsel are analyzed under a two-part test. See also *People v. Albanese*, 104 Ill. 2d 504 (1984) (adopting the *Strickland* test in Illinois). Under that test, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that there exists a reasonable probability that the substandard performance resulted in prejudice to the defendant. *Strickland*, 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Because a defendant must satisfy both components of the *Strickland* test, the failure to establish either is fatal to the claim. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

Here, the argument that defendant's trial counsel was ineffective under *Strickland*, as defendant has asserted, provides the appropriate and most straightforward means to address defendant's contentions. As the majority itself notes, the record suggests no basis on which one could conclude that counsel's objections, if made, would " 'have fallen on deaf ears.' " 235 Ill. 2d at 488, quoting *People v. Davis*, 378 Ill. App. 3d 1, 10 (2007). Applying the *Strickland* test, defendant's ineffective assistance of counsel claim can be disposed of on prejudice grounds alone. Defendant has not shown that he was prejudiced by what occurred during jury deliberations. As the majority concludes, defendant cannot establish prejudice for either of his claims of error. 235 Ill. 2d at 496, 499. Defendant therefore cannot establish the requisite prejudice under *Strickland*, and his claims of error fail.

Instead of addressing the substance of defendant's contentions on the basis of ineffective assistance of counsel, the majority assesses them in the course of an incomplete plain-error analysis that is out of step with our case law.

With respect to the first of defendant's claims, at the conclusion of the section entitled *Right of Presence* the majority states,

"As we have discussed, however, defendant in the present case did not properly preserve his objections. Because he has forfeited his claims, we review them only for plain error, and the burden of persuasion remains on defendant to show prejudice. He has not done so. *Because defendant was denied neither a fair trial nor any other substantive right, we hold that his right of presence was not violated.*" (Emphasis added.) 235 Ill. 2d at 495-96.

The emphasized text suggests a ruling on the merits and not a ruling that the issue is procedurally defaulted. As this court stated in *People v. Keene*, 169 Ill. 2d 1, 17 (1995),

"[T]hough it is often not expressed, short of a conclusion that an asserted error is a 'plain' one, the so-called plain error doctrine offers no basis to excuse a procedural default. (See Wangerin, 29 DePaul L. Rev. at 772.) The point is crucial, for while all plain errors are reversible ones, not all reversible errors are also 'plain' for purposes of Rule 615(a). (See generally M. Graham, Cleary & Graham's Handbook of Illinois Evidence §103.10, at 33 (6th ed. 1994).) Of course, to determine whether a purported error is 'plain' requires a substantive look at it. *But if, in the end, the error is found not to rise to the level of a plain error as contemplated by Rule 615(a), the procedural default must be honored.*" (Emphasis added.)

Thus, if the majority believes that defendant has not established plain error, the majority should conclude not that defendant's "right of presence was not violated" (235 Ill. 2d at 496), but that no basis exists to excuse the default. See *Keene*, 169 Ill. 2d at 19, 33.

Similarly, at the conclusion of the section entitled *Interference With the Jury*, the majority states that defendant "has alleged nothing more than generalities to support his claim that the bailiff's communication with the jury prejudiced him." 235 Ill. 2d at 499. Again, this language suggests a ruling on the merits. The majority

should conclude this section with a statement that plain error being absent, no basis exists to reach the merits of the claim.

This is no small matter. As I have previously explained, there are consequences when state courts of review do not clearly state their holdings with respect to procedural default and plain error. See *People v. Terrell*, 185 Ill. 2d 467, 529 (1998) (Freeman, C.J., concurring, joined by McMorrow, J.). When this court concludes that a defendant has not satisfied the plain-error rule and holds the matter procedurally defaulted, that conclusion is recognized as an adequate and independent state ground[4] precluding the issue from federal *habeas corpus* review. *Neal v. Gramley*, 99 F.3d 841, 944 (7th Cir. 1996); *Coleman v. Thompson*, 501 U.S. 722, 729, 115 L. Ed. 2d 640, 655-56, 111 S. Ct. 2546, 2553-54 (1991). As I pointed out in *Terrell*, federal courts in *habeas* proceedings cannot properly apply the foregoing principles if the underlying state court judgment is abstruse. The courts are left to discern whether the state court resolved the issue on the independent and adequate state ground or on substantive principles grounded in or interwoven with federal law. For this reason, the United States Supreme

---

[4]To be deemed "adequate," the state procedural rule must have been "firmly established and regularly followed." *James v. Kentucky*, 466 U.S. 341, 348-51, 80 L. Ed. 2d 346, 353-55, 104 S. Ct. 1830, 1835-36 (1984). The rule must also be applied in a "consistent and principled way;" a rule that is " 'infrequently, unexpectedly, or freakishly' " applied is not an adequate state ground that bars relief. *Thomas v. McCaughtry*, 201 F.3d 995, 1000 (7th Cir. 2000), quoting *Bobo v. Kolb*, 969 F.2d 391, 399 (7th Cir. 1992). A state court rule is independent if it is independent of the federal question and the court " 'actually *** relied on the procedural bar as an independent basis for its disposition of the case.' " *Harris v. Reed*, 489 U.S. 255, 261-62, 103 L. Ed. 2d 308, 316, 109 S. Ct. 1038, 1042 (1989), quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327, 86 L. Ed. 2d 231, 238, 105 S. Ct. 2633, 1638 (1985).

Court attempted to address this problem by specifically "encourag[ing] state courts to express plainly, in every decision potentially subject to federal review, the grounds upon which their judgments rest." *Coleman*, 501 U.S. at 739, 115 L. Ed. 2d at 662, 111 S. Ct. at 2559. In my view, the majority opinion is needlessly ambiguous in this respect.

I conclude this concurrence with a few observations regarding the majority's discussion of *People v. Sprinkle*, 27 Ill. 2d 398 (1963). 235 Ill. 2d at 485-89. This discussion is triggered by defendant's reliance on the case in arguing that, because the errors were committed by the trial court, the rules of forfeiture should be relaxed.[5]

The majority notes that *Sprinkle* holds that forfeiture rules are relaxed when the conduct of the judge occurs in front of the jury, but it also acknowledges that this court "has occasionally applied the *Sprinkle* principle[6] even where no jury is present." 235 Ill. 2d at 487. The majority then observes (i) that the general rule of relaxing forfeiture under *Sprinkle* will only be found "under extraordinary circumstances" (235 Ill. 2d at 488), and (ii) "[t]hat we have seldom applied *Sprinkle* to noncapital cases further underscores the importance of uniform application of the forfeiture rule except in the most compelling of situations" (235 Ill. 2d at 488).

This court, in its past cases, has never spoken in terms of (i) using the holding in *Sprinkle* in "compelling" situations, or (ii) limiting the application of the holding in *Sprinkle* to capital cases or "extraordinary

---

[5]*Sprinkle* holds that when a judge questions witnesses, it is often difficult for a defense attorney to make objections without looking bad in the eyes of the jury. *Sprinkle*, 27 Ill. 2d at 400. The holding has been applied in a handful of cases over the decades.

[6]The majority refers to the holding in *Sprinkle* as a "principle" (235 Ill. 2d at 487) and a "doctrine" (235 Ill. 2d at 487 n.1). This court has never before recognized that case as announcing some new doctrine or principle of law.

circumstances." If it is the intent of the majority today to limit the application of the holding in *Sprinkle*, it should say so directly. In any event, the majority's effort in this respect is unnecessary; *Sprinkle* is limited by its own circumstances, a fact that belies its purported establishment of a "doctrine" or "principle."

As noted, the underlying premise for the holding in *Sprinkle* was concern arising from the perceived reluctance of defense attorneys to raise objections that suggest criticism of the trial judge. This reluctance owed to fear of what effect such objections would have on the jury and what conclusions the jury would draw against the defendant. See *Sprinkle*, 27 Ill. 2d at 400-01. Such fears can be avoided if defense counsel asks for a sidebar and during the course of the sidebar makes a standing objection to the question or comment for the record. In that way, a contemporaneous objection can be made outside the presence of the jury, and the issue can be preserved properly for appellate review (assuming, of course, counsel includes the matter in the posttrial motion). If this court were to require such a procedure to be followed in our trial courts, the need for the holding in *Sprinkle* would be alleviated. Claims not preserved because the procedure was not followed could then become the basis for an ineffective assistance of trial counsel claim on appeal.