NOTICE
Decision filed 02/10/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230057-U

NO. 5-23-0057

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Lawrence County. |
| | ) | |
| v. | ) | No. 22-CF-111 |
| | ) | |
| ARTHUR L. HARVEY, | ) | Honorable |
| | ) | Matthew J. Hartrich, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Boie and Vaughan concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We vacate defendant's sentence, remand for a new resentencing hearing, and order the circuit court to properly amend defendant's mittimus to correct defendant's mandatory supervised release to one year. Defendant waived his claim that a *Krankel* hearing was necessary.

¶ 2   Defendant, Arthur L. Harvey, appeals the Lawrence County circuit court's judgment revoking his probation for arson and sentencing him to seven years in prison followed by two years of mandatory supervised release (MSR).

¶ 3                           I. Background

¶ 4   On August 31, 2022, the State charged defendant with one count of arson (720 ILCS 5/20-1(a)(1) (West 2022)), a Class 2 felony. The State alleged that on August 25, 2022, defendant, by

means of fire, knowingly damaged personal property of Mark Stovall without Stovall's consent at a residence located at 1509 8th Street in Lawrenceville, Illinois.

¶ 5    On September 16, 2022, defendant entered a fully negotiated plea to arson, and the circuit court sentenced him to 24 months' probation. At the plea hearing, the State explained that, in exchange for defendant's plea, the State recommended 24 months' probation and a fine of $1,000. The State explained that defendant "would also be entering a plea of guilty in 22-MT-19 to the charge of Driving While License Revoked" and that the State "[wa]s moving to dismiss 22-MT-33 pursuant to the plea agreement." The circuit court asked defendant if he had questions about the agreement, and defendant responded, "No." Defendant confirmed his understanding that he was pleading guilty to arson, which was a Class 2 felony. The court then asked if defendant understood that the offense was ordinarily punishable upon conviction by a fine of up to $25,000 and incarceration for up to seven years, with one year of MSR, "all as a maximum penalty." Defendant responded, "Yes." After the court admonished defendant, he signed a written guilty plea and waiver of jury trial.

¶ 6    The circuit court then asked the State to provide a factual basis. The State asserted that if the matter proceeded to trial, it would "call witnesses who would testify [that] on August 25, 2022, [d]efendant ***, by means of fire, knowingly damaged personal property of Mark Stovall, being a structure located at 1509 Eighth Street in Lawrenceville, Lawrence County, Illinois, and he did so without the consent of Mark Stovall." Defense counsel stipulated that "if this matter went to trial, the State could present evidence as indicated." The court found the factual basis sufficient and that defendant "freely, knowingly and voluntarily waived his rights of a trial by jury and other rights of defense and has pled guilty to that charge of Arson, a Class 2 Felony." The court further

ordered, "consistent with the agreement, [defendant] *** placed on probation for a period of 24 months on that charge."

¶ 7     On September 23, 2022, defendant was arrested in connection with a vehicle fire that occurred the night before on September 22, 2022. Defendant was subsequently charged with an additional offense of arson relating to the fire in case No. 22-CF-130.[1]

¶ 8     On October 6, 2022, defendant filed a *pro se* motion to withdraw his guilty plea. Defendant alleged that the residence located at 1509 8th Street was owned by his stepfather, Stovall, and that Stovall advised the State that "he was not going to pursue charges because [defendant] was just trying to clean up the trash remains of the burnt house." Defendant alleged that "the house was not standing [and] was all inside the basement walls." Defendant alleged that, while in distress at the time of his plea, he worried about losing his house and job while in jail. As such, defendant alleged that he accepted the State's plea offer because his boss, a disabled man, depended on defendant to run his business. Defendant also alleged that he filed a motion to withdraw his guilty plea because he wanted to prove his innocence. On October 25, 2022, defense counsel filed a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017).

¶ 9     On October 26, 2022, the circuit court held a hearing. The court initially found probable cause for the charge in case No. 22-CF-130 (vehicle fire). The court next addressed defendant's motion to withdraw his guilty plea in case No. 22-CF-111 (residential fire). Defendant testified that he did not feel he had any choice but to plead guilty because he was incarcerated at the time and pleading guilty would result in his immediate release. Defendant relayed that he "was afraid [he] was getting ready to lose [his] house, [his] job, and everything [he] had worked for." Defendant claimed that his extended absence from work would harm his employer's business.

---

[1]The charging instrument from case No. 22-CF-130 has not been included in the record on appeal.

Defendant testified that he was not guilty of committing arson in the residential fire and believed he had "a good defense." After hearing arguments from the parties, the court denied defendant's motion. The court admonished defendant of his right to appeal from the court's denial of his motion to withdraw his guilty plea. Defendant did not file an appeal from the original plea or the denial of his motion to withdraw.

¶ 10    On December 14, 2022, the State filed a petition charging a violation of conditions of probation. The State specifically alleged that defendant violated a penal ordinance on September 23, 2022, when he was arrested in Lawrence County, Illinois, and charged with arson for the vehicle fire.

¶ 11    On December 21, 2022, the circuit court held a hearing on the State's petition. The State called various witnesses to testify at the hearing. Jacqueline Hartsock testified that on September 22, 2022, defendant, who she knew from childhood, installed new tires on her vehicle at the shop where he worked. At that time, defendant wore dark blue shorts and a dark blue shirt. Defendant invited Hartsock to talk with him while he installed her new tires, at which time he invited her to his house for a bonfire later that evening. However, defendant and Hartsock both went to defendant's cousin's house later that evening. While at his cousin's house, defendant attempted to make sexual advances towards Hartsock, but Hartsock rejected defendant. Hartsock became too intoxicated to drive herself home, so defendant's cousin drove Hartsock home, and defendant drove Hartsock's vehicle to Hartsock's home. Hartsock's boyfriend or ex-boyfriend, Tommy Irvin, was at Hartsock's house when they arrived, which upset defendant. At approximately 9 p.m., defendant texted Hartsock from outside her house. Hartsock briefly spoke with defendant on the phone but ignored his phone calls at 9:04 p.m. and 9:25 p.m. According to Hartsock, defendant "was trying to get me to come outside and talk to him." To prevent an altercation, Hartsock locked

4

defendant out of her home and asked him to leave. Shortly after this, Hartsock discovered her car on fire. Hartsock recalled that defendant wore "shorts, a walkie talkie and a cut-off t-shirt" that evening. Following testimony, the circuit court revoked defendant's probation.

¶ 12    On January 17, 2023, the State filed a presentence report with the circuit court. According to the presentence report, defendant's juvenile criminal history included two counts of theft, "knowingly damage [to] property," criminal trespass to residence, battery, and "damage to motor vehicle," all Class A misdemeanors. The court placed defendant on probation, but the State subsequently filed a petition to revoke his probation. Defendant's adult criminal history included arson, a Class 2 felony; five counts of disorderly conduct, Class C misdemeanors; aggravated battery with use of a deadly weapon, a Class 3 felony; aggravated battery, a Class 2 felony; battery, a Class A misdemeanor; unlawful possession of a converted vehicle, a Class 2 felony; driving on a revoked license, a Class A misdemeanor; two counts of driving under the influence of alcohol, Class A misdemeanors; and two counts of driving on a suspended license, Class A misdemeanors. The presentence report also demonstrated that the court sentenced defendant to probation as an adult six times, and the State subsequently filed multiple petitions to revoke defendant's probation.

¶ 13    Attached to the presentence report was a section titled, "Offender's Version." In this section, defendant alleged that he changed Hartsock's tires on September 22, 2022, and noticed damage to her front passenger door. Defendant advised Hartsock that she could "swing by [his] house sometime," so they could hang out and he could work on the front passenger door. Defendant planned to go to his cousin's house after work that day. Defendant texted Hartsock to see if she wanted to "swing by," and she said she would "to do some day drinking" at defendant's cousin's house. Defendant claimed that he, Hartsock, and his cousin drank around a fire until approximately 9 p.m. Defendant claimed that his cousin and Hartsock were "highly intoxicated," so defendant

drove Hartsock's car to her house to "keep Jackie from getting a DUI or having a wreck." Defendant walked Hartsock to her porch stairs but walked back down the stairs after he saw Irvin in Hartsock's house. Defendant called and texted Hartsock to come outside, but Hartsock did not respond, so he walked home "toward the old high school." Defendant denied that he got "back into Jackie's car [and] [swore] on [his] brother's grave [he] didn't burn it."

¶ 14 On January 25, 2023, the circuit court resentenced defendant to seven years in prison on the residential fire, to be served at 50%, followed by two years of MSR. In fashioning defendant's new sentence, the court considered, as factors in aggravation, defendant's extensive, prior criminal history, as detailed in the presentence investigation report, and deemed a prison sentence necessary to deter others from committing similar crimes, noting that "a sentence of further probation would deprecate the seriousness of this offense." The court also stated that defendant's prison sentencing range included "from three years to, up to 14 years because he is extended-term eligible based upon prior criminal history." The court then stated:

"Based upon that, based upon my full review of the Presentence Investigation and Report and his fairly extensive criminal history and that he was essentially just placed on probation when this offense occurred, I am going to sentence [defendant] to seven years in the [D]epartment of [C]orrections followed by two years of mandatory supervised release."

¶ 15 On February 1, 2023, defendant filed a motion to reconsider, arguing that the circuit court erred by finding that defendant violated his probation and that the court imposed an excessive sentence in light of the nature and circumstances of the offense. The court denied defendant's motion, and defendant filed a timely notice of appeal.

¶ 16                                                    II. Analysis

¶ 17 Defendant first argues that his sentence should be vacated and remanded for resentencing, where the circuit court considered an extended-term sentence at resentencing without admonishing him that he was eligible for an extended-term sentence when the court accepted his guilty plea. As

such, defendant asserts that the court considered his sentence on the mistaken belief that defendant was extended-term eligible at the resentencing hearing. Defendant acknowledges that he forfeited review of this argument by failing to raise it before the circuit court but asks this court to review it under the second prong of the plain-error doctrine. In response, the State concedes that the circuit court should have ordered one year of MSR. The State further responds that defendant did not receive an extended-term sentence, but the court sentenced him in accordance with the admonishments that defendant received at the time of the negotiated plea, noting that the "maximum non-extended term sentence in this case is the seven-year sentence that defendant received."

¶ 18    Section 5-4.5-35 of the Unified Code of Corrections (Code) provides that the sentence of imprisonment for a Class 2 felony "shall be a determinate sentence of not less than 3 years and not more than 7 years." 730 ILCS 5/5-4.5-35(a) (West 2022). Section 5-4.5-35 of the Code further provides that "[t]he sentence of imprisonment for an extended term Class 2 felony, as provided in Section 5-8-2 (730 ILCS 5/5-8-2), shall be a term not less than 7 years and not more than 14 years." *Id.* Section 5-8-2 of the Code provides, in pertinent part, as follows:

> "If the conviction was by plea, it shall appear on the record that the plea was entered with the defendant's knowledge that a sentence under this Section was a possibility. If it does not so appear on the record, the defendant shall not be subject to such a sentence unless he is first given an opportunity to withdraw his plea without prejudice." *Id.* § 5-8-2(b).

Section 5-4.5-35(*l*) further provides that the "mandatory supervised release term shall be 2 years upon release from imprisonment." *Id.* § 5-4.5-35(*l*). The issue of whether the circuit court complied with a statute in sentencing a defendant is a question of law we review *de novo*. See, *e.g.*, *People v. Fort*, 2017 IL 118966, ¶¶ 19-20.

¶ 19    We first note that defendant admits that defense counsel failed to challenge this issue before the circuit court. Accordingly, defendant forfeited this issue. See *People v. Enoch*, 122 Ill. 2d 176,

7

186 (1988) (a defendant forfeits review of an issue if he fails to object at trial and raise the issue in a posttrial motion). Defendant, however, argues in his opening brief that forfeiture should be excused under the second prong of the plain-error doctrine.

¶ 20     To obtain relief under the plain-error doctrine, "defendant must first show that a clear or obvious error occurred." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). In plain-error review, the burden of persuasion rests with the defendant. *People v. McLaurin*, 235 Ill. 2d 478, 495 (2009). Under the second prong of plain-error review, "[p]rejudice to the defendant is presumed because of the importance of the right involved, '*regardless* of the strength of the evidence.' " (Emphasis in original.) *People v. Herron*, 215 Ill. 2d 167, 187 (2005) (quoting *People v. Blue*, 189 Ill. 2d 99, 138 (2000)). In *People v. Glasper*, our supreme court equated the second prong of plain-error review with structural error, asserting that "automatic reversal is only required where an error is deemed 'structural,' *i.e.*, a systematic error which serves to 'erode the integrity of the judicial process and undermine the fairness of the defendant's trial.' " 234 Ill. 2d 173, 197-98 (2009) (quoting *Herron*, 215 Ill. 2d at 186).

¶ 21     We assume the trial judge considers only competent evidence in fashioning a sentence, and this assumption is overcome only if the record affirmatively demonstrates the contrary. *People v. Myrieckes*, 315 Ill. App. 3d 478, 483 (2000). In considering whether a mistaken belief influenced a trial judge's sentencing decision, a reviewing court looks to whether the trial judge's comments show that the trial judge relied on the mistaken belief or used the mistaken belief as a reference point in fashioning the sentence. *People v. Hill*, 294 Ill. App. 3d 962, 970 (1998).

¶ 22     Here, the record does not show that the circuit court admonished defendant at the guilty plea hearing of the possibility of an extended-term sentence. The record indicates that the court advised defendant that the offense of arson was ordinarily punishable upon conviction by a fine of

8

up to $25,000 and incarceration for up to seven years, with one year of MSR as the maximum penalty. The court did not reference the possibility of an extended-term sentence at the guilty plea hearing prior to defendant pleading guilty and the court accepting his plea of guilt. However, at the sentencing hearing, the court stated that defendant's sentencing range was "from three years to, up to 14 years because he is extended-term eligible based upon prior criminal history."

¶ 23　Although the circuit court imposed a seven-year sentence—the maximum nonextended-term sentence and also minimum extended-term sentence, as the State points out,—the court, prior to sentencing defendant, indicated that defendant was extended-term eligible, due to his "fairly extensive criminal history and that he was essentially just placed on probation when this offense occurred." Because the record suggests that the court erroneously believed that defendant was eligible for extended-term sentencing, which could have impacted defendant's sentence, we find defendant entitled to relief under the second prong of the plain-error doctrine. As such, we vacate the sentence imposed and remand for resentencing. We also order the circuit court on remand to amend defendant's mittimus to correct defendant's MSR to one year, which represents the maximum penalty the court admonished defendant of at the guilty plea hearing. Because this issue is dispositive of all remaining sentencing issues, we need not address defendant's additional arguments concerning resentencing.

¶ 24　Next, we address defendant's alternative argument that the circuit court erred by failing to address his *pro se* complaints about trial counsel, as required by *People v. Krankel*, 102 Ill. 2d 181 (1984), thus requiring remand. Defendant claimed the following, not in a motion to withdraw guilty plea but a section titled, "Offender's Version," attached to the presentence report: "I also feel I have not been treated right through the court and I don't feel my court appointed lawyer has done me much good. I have had to tell him to voice what I wanted to ask during court." Defendant

also stated, "I strongly feel that if I retained a lawyer this case wouldn't exist because it is hear say [*sic*] [and] no proof." Although courts have "lessened the burden on defendants, unskilled in the law, to make an assertion sufficient to warrant a *Krankel* inquiry," courts of review should be "reluctant to require trial courts to somehow glean an ineffective-assistance-of-counsel claim from every obscure complaint or comment made by a defendant." *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 30. On this record, defendant failed to trigger a preliminary *Krankel* inquiry.

¶ 25    Moreover, and importantly, defendant entered a voluntary open plea of guilty to the offense of arson. "It is well established that a voluntary guilty plea waives all nonjurisdictional errors or irregularities, including constitutional ones." *People v. Townsell*, 209 Ill. 2d 543, 545 (2004) (citing *People v. Peeples*, 155 Ill. 2d 422, 491 (1993)); see also *People v. Burton*, 184 Ill. 2d 1, 27 (1998); *People v. Mueller*, 2013 IL App (5th) 120566, ¶ 12.

> "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (defendant must show that counsel's advice not competent)).

Thus, defendant waived this issue by entering his voluntary open plea of guilty.

¶ 26                                III. Conclusion

¶ 27    For the reasons stated, we vacate defendant's sentence in Lawrence County and remand for a new resentencing hearing. We also order the circuit court to properly amend defendant's mittimus to correct defendant's MSR to one year.

¶ 28    Vacated; cause remanded with directions for further proceedings.

10