FIFTH DIVISION
December 3, 2010

No. 1-09-0418

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| v. | ) | |
| | ) | 07 CR 8322 |
| LEE WIGOD, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | William G. Lacy, |
| | ) | Judge Presiding. |

JUSTICE TOOMIN delivered the opinion of the court:

Here, we must determine whether prejudice inuring from purported inadequate guilty plea admonishments was compounded by the trial court's *ex parte* denial of defendant's motion to reconsider sentence, thereby providing the basis for vacature of the plea. Following a plea of guilty to the offense of failure to support, defendant, Lee Wigod, was sentenced to serve 18 months' imprisonment and ordered to pay restitution totaling $85,802. Defendant's *pro se* motions to reduce his sentence and correct the restitution order were denied.

He now appeals contending: (1) he was inadequately admonished of the consequences of his plea and his appeal rights pursuant to Supreme Court Rules 604 and 605 (210 Ill. 2d Rs. 604, 605); (2) the denial of his postplea motions violated Supreme Court Rule 604 (210 Ill. 2d R.

604); (3) the scope of the restitution order was beyond the authority of the trial court; and (4) the restitution order is inadequate. Although defendant's opening brief asserted that the enactment under which he was charged violated the "single subject rule," he has since abandoned that contention. For the reasons that follow, we vacate the judgment of the circuit court and remand for further proceedings.

## BACKGROUND

Defendant was charged by indictment with a single count of the offense of failure to support, pursuant to the Non-Support Punishment Act (750 ILCS 16/15(a)(4) (West 2006)). The indictment alleged defendant:

> "[W]illfully failed to pay a support obligation required under a court *** order for
>
> support and the obligation has remained unpaid for a period longer than one year, or
>
> is in arrears in an amount greater than twenty thousand dollars ($20,000) and he has
>
> the ability to provide support, and said offense is based upon a series of such acts
>
> performed at different times by [defendant]."

The instant prosecution initially proceeded to a bench trial on December 17, 2007. After a single witness testified, the matter was continued. On January 28, 2008, defendant's counsel were granted leave to withdraw and substitute counsel entered an appearance on defendant's behalf. In turn, the matter was continued from time to time, until August 5, 2008, when defendant elected to enter a blind plea of guilty.

After ascertaining defendant's desire to change his plea, the trial judge stated:

> "You are charged in this case with a crime of failure to support. That is a

Class 4 felony. What that means is when you plead guilty, then it will be up to me to sentence you anywhere from probation up to time in the penitentiary, anywhere from a minimum of one year up to a maximum of three years, and that would carry one year of mandatory supervised release which is what they used to call parole."

Defendant indicated he understood and changed his plea to that of guilty. The trial judge then admonished defendant as to the rights he was giving up by changing his plea. The judge added: "And you understand that I have the realm to sentence you to any of *those possible sentences*, do you understand that." (Emphasis added.) Defendant indicated that he did.

Thereafter, the State offered the following factual basis for the plea. Defendant and Susan Wigod-Giffen married in 1986. A daughter, Carley, was born from this union in 1990. Defendant and Susan separated in 1993. The separation agreement awarded custody of Carley to Susan and obligated defendant to pay $125 per week in child support. Thereafter, on December 29, 1995, a judgment of dissolution of marriage was entered. A marital settlement agreement was incorporated into the judgment, providing, *inter alia*, that Susan would retain custody of Carley, that defendant was to pay $150 per week in child support, along with health care and daycare costs, and repayment of $5,000 defendant withdrew from Carley's bank account. Because defendant was already $2,716 in arrears at the time of the time of the dissolution, by operation of the initial separation agreement, he was ordered to pay $237.65 per month until satisfied.

Neither the arrearage nor the $5,000 repayment was made. On September 10, 2002, an order was entered reflecting an arrearage totaling $48,300. Defendant was then held in contempt

of court. A modified order was entered on August 12, 2003, based upon defendant's claimed loss of income, reducing his obligation to $234 per month, payable in fortnightly installments of $117. On July 7, 2005, an order was entered reflecting a child support arrearage totaling $101,928, as well as amounts due and owing for Carley's daycare. Defendant continually failed to pay and did so for a period exceeding one year.

According to the State, documentary evidence would further demonstrate an ability to pay as shown, *inter alia*, by bank records reflecting deposits of $30,000 into defendant's individual bank account during a period of time when he claimed only $3,000 in income. Additionally, the evidence would show defendant received two $5,000 cash loans from his co-worker, Robert Kenig. Yet, according to the State, none of this money was used to reduce his outstanding child support obligation. In 1996, defendant married Lori (Weedsman) Wigod. During their union, two condominiums were purchased in Chicago for approximately $430,000 and $971,000. Additionally, they owned two cars, took vacations annually, and went on cruises. During 2004 and 2005, defendant was employed in a position where he earned a salary, together with commissions. Defendant persisted in the nonpayment of his obligations.

Additionally, the State represented that the willful character of defendant's conduct could be demonstrated in several ways. Defendant had undertaken numerous efforts and tactics to delay the proceedings in the civil court, including filing a variety of frivolous and baseless motions. Furthermore, he filed for bankruptcy on so many occasions that the United States Bankruptcy Court barred him from further petitions without first obtaining leave of court. Moreover, defendant's ex-wife, Susan, would testify that in 1993, at the time of the initial

separation, defendant stated: "You will regret this decision. I will drag you through the courts, and you will never see a dime."

Defense counsel stipulated to the majority of the State's factual basis. However, defendant refused to stipulate to the full measure of the arrearage as described by the prosecutor. The State agreed that the actual amount owed required further discussion and ultimate resolution by the parties. Nevertheless, defense counsel stipulated that the original judgment "was for $101,000 three years ago."

The trial court accepted the stipulation and upon receiving the plea added:

"I find the defendant does understand the nature of the charge against him and the possible penalties, that this plea has been made freely and voluntarily and that a factual basis does exist for the plea; therefore, the plea will be accepted. There will be a finding of guilty and judgment will be entered on that finding.

Sir, even though you have pled guilty in this case, you do have certain appellate rights; but in order for you to exercise those rights, within 30 days you must file with this court a motion asking the court to withdraw your plea of guilty. That motion must be in writing and as I stated, filed within 30 days of today's date.

In that motion you must put every claim of error or any issue or claim of error regarding the plea of guilty or this proceeding and any aspect of this hearing. If you leave anything out and the motion is denied, that issue will be deemed waived on appeal."

In turn, defendant affirmed his understanding of the foregoing admonishment.

At the sentencing hearing, defendant's ex-wife, Susan, testified to the couple's marriage, separation, dissolution, as well as defendant's conduct thereafter. Much of her testimony mirrored the factual basis offered by the State at defendant's plea. According to Susan, the entry of the dissolution was delayed because defendant twice failed to produce funds to resolve the arrearage accumulated during their separation. Following a court-mandated mediation, defendant approached Susan and the following occurred:

"He begged me not to follow through with the divorce. And when I told him that I was proceeding, he told me that he would drag me through the courts through the rest of my life and bankrupt me."

Ultimately, she agreed to entry of the dissolution without first receiving that payment. Defendant never satisfied his financial obligations under the agreement, including, *inter alia*, child support, medical, dental, and educational expenses for Carley. Additionally, defendant did not repay the $5,000 he took from an inheritance meant for Carley. Consequently, Susan has expended significant time and resources since the dissolution in order to compel payment. Susan testified to tables she created listing payments defendant made. During 2004, he paid a total of $1,170.

Susan indicated that defendant never told her where he was employed during the 12 years leading up the sentencing. Likewise, he had repeatedly represented to the civil court he was unemployed. However, Susan, with the help of her current husband, determined that defendant was employed at one point with Revere Mortgage. Through this connection, she spoke to Kenig, who worked there as well, and learned of the $10,000 loan he made to defendant.

According to Susan, during periods of time when defendant was not paying support he took vacations and even brought Carley to Arizona, Las Vegas, Florida, and other places, as well as taking her on a cruise. When confronted about these expenditures, defendant explained that he would do what he wanted to do. Susan further described defendant's failure to reimburse her for the cost of an airline ticket he purchased using her airline miles. Though this was incorporated into the agreement at the time of the dissolution, defendant failed to make the required reimbursement. At one point defendant was placed in handcuffs during a civil hearing and given 24 hours to come up with a "purge amount" in order to avoid jail. While the record is not explicit on this point, it appears defendant did so.

In a statement read to the court, Susan acknowledged defendant's payment of support for a "brief time" following the divorce. Otherwise, he claimed he was "unemployed and unemployable *** had no income, that he was destitute, he was indigent." Although she maintained records of payments made at various points, she acknowledged that her table might not cover all of the payments he made. Nevertheless, defendant had an opportunity to establish the amounts he paid prior to the entry of the judgment for $101,928 against him.

The parties stipulated that defendant filed for bankruptcy 10 times. On the final occasion, defendant's petition was dismissed with prejudice. Moreover, the bankruptcy court barred him from further filings without first obtaining leave of court.

Defendant's current wife, Lori, testified to her ownership of two condominiums, valued at $430,000 and $971,000, as well as two vehicles. While both of the properties were purchased during her marriage to defendant, his name is not on either of them. However, a home equity

line of credit was obtained in both of their names. Likewise, she purchased the two vehicles and placed them in her name. Lori further explained that she did not file joint tax returns with defendant and did not know what he earned. She described giving defendant $1,600 for a child support payment at one point. Additionally, she had occasionally assisted in the payment of attorneys in the civil case and offered to pay defendant's bond. Although defendant contributed money to their marital expenses, she paid most of the bills. She did not give defendant an allowance of any kind.

The parties entered into several documentary stipulations, essentially relevant to the domestic relations proceedings. Defendant also offered several receipts of payments made during 2008 for child support, totaling $2,760. Additionally, defendant tendered a cashier's check for $15,000. Defendant then offered a statement to the court acknowledging his shortcomings and inability to earn money. He stated, "I still owe a great deal of child support, I do intend to pay it." He added, "I think that the information that [defense counsel] put forward was when I did have the ability, I did try to pay. The periods of time when I didn't pay, that's when I didn't have the ability. That's no excuse." Thereafter, the trial judge ordered an increase in defendant's bond, resulting in defendant being taken into custody. The matter was then taken under advisement.

When the hearing resumed, defendant was sentenced to 18 months' imprisonment and ordered to pay restitution in the amount of $88,502. The trial court then advised defendant of his right to withdraw his guilty plea and to reconsideration of the court's sentence. The court also entered an order exonerating defendant's bond and directed the proceeds be applied to his

restitution obligation. The amount owed was thereby reduced to $85,802[1] as reflected in the restitution order.

Thereafter, while in custody, defendant prepared and filed certain posttrial motions, including a motion to correct the restitution award. Defendant contended the amount was in error because it did not adequately account for payments he made between 1996 and 2008. The motion also challenged the court's ability to enter the restitution award, as it included amounts "outside of child support." Additionally, defendant filed a motion to reduce his sentence. A combined memorandum in support was offered for the motions, whereby defendant articulated numerous reasons why the restitution order required correction. Defendant also claimed his plea was coerced, when counsel appeared unprepared for trial. The memorandum further alleged a wide range of examples of defense counsel's ineffectiveness. In denying the motions, the trial judge noted that defendant failed to explain why the court lacked jurisdiction to enter the restitution order. Neither defendant nor counsel was present during consideration or ruling on the posttrial motions.

Defendant now appeals.

## ANALYSIS

[1] We note that this amount does not justify with the other amounts appearing in the record. The actual amount of bond posted – a 10% deposit – was $2,500. The amount reflected in the restitution order is $2,700 less than the original amount ordered in the trial judge's announcement of sentencing. All of this is so without taking into account the usual and customary fee deducted from exonerated bonds by the clerk of the circuit court.

1-09-0418

Defendant's first claim of error stems from the alleged inadequacy of the court's admonishments during the hearing on his change of plea. Notably, the trial judge failed to mention the element of restitution as a consequence of his guilty plea. The State responds that defendant has forfeited this claim by failing to raise it in his postplea motions or, in the alternative, that no error occurred. In order to preserve an issue for appellate review, it is generally recognized that defendants must object at trial as well as in their written posttrial motions. *People v. Nelson*, 235 Ill. 2d 386, 436, 922 N.E.2d 1056, 1083 (2009). However, exceptions such as the plain-error doctrine permit otherwise forfeited matters to be considered on review. As our supreme court observed in *People v. McLaurin*:

> "The plain-error doctrine allows a reviewing court to remedy a 'clear or obvious error' in two circumstances, regardless of the defendant's forfeiture: (1) where the evidence in the case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence; or (2) where the error is so serious that the defendant was denied a substantial right, and thus a fair trial." *People v. McLaurin*, 235 Ill. 2d 478, 489, 922 N.E.2d 344, 351 (2009), citing *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 411 (2007) .

Because this analysis presupposes the existence of an error, we must first determine whether an error of the magnitude contemplated by the doctrine actually occurred. *McLaurin*, 235 Ill. 2d at 489, 922 N.E.2d at 351-52, citing *Piatkowski*, 225 Ill. 2d at 565, 870 N.E.2d at 411. As the question before us concerns the interpretation of a supreme court rule, our review is *de novo*. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332, 775 N.E.2d 987, 992 (2002).

10

1-09-0418

Supreme Court Rule 402 provides, in relevant part, as follows:

"In hearings on pleas of guilty, *** there must be substantial compliance with the following:

(a) Admonitions to Defendant. The court shall not accept a plea of guilty *** without *** addressing the defendant personally in open court, informing him of and determining that he understands the following:

***

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences[.]"

177 Ill. 2d R. 402(a)(2).

Section 15 of the Non-Support Punishment Act (750 ILCS 16/15 (West 2006)) provides:

"(a) A person commits the offense of failure to support when he or she:

* * *

(4) willfully fails to pay a support obligation required under a court or administrative order for support, if the obligation has remained unpaid for a period longer than one year, or is in arrears in an amount greater than $20,000, and the person has the ability to provide the support.

***

(b) Sentence. A person convicted of a first offense under subdivision (a)(1)

11

or (a)(2) is guilty of a Class A misdemeanor. A person convicted of an offense under subdivision (a)(3) or (a)(4) or a second or subsequent offense under subdivision (a)(1) or (a)(2) is guilty of a Class 4 felony.

\*\*\*

(d) Fine. Sentences of imprisonment and fines for offenses committed under this Act shall be as provided under Articles 8 and 9 of Chapter V of the Unified Code of Corrections, except that the court shall order restitution of all unpaid support payments and may impose the following fines, alone, or in addition to a sentence of imprisonment under the following circumstances:

\* \* \*

(3) from $10,000 to $25,000 if the support obligation has remained unpaid for a period longer than 8 years, or is in arrears in an amount greater than $20,000[.]

(e) Restitution shall be ordered in an amount equal to the total unpaid support obligation as it existed at the time of sentencing. Any amounts paid by the obligor shall be allocated first to current support and then to restitution ordered and then to fines imposed under this Section." 750 ILCS 16/15 (West 2006).

As a threshold matter, we recognize that the standards of statutory construction and interpretation apply equally to our supreme court rules. *Robidoux*, 201 Ill. 2d at 332, 775 N.E.2d at 992. In reviewing these enactments, our primary objective is to give effect to the intent of the drafters. *People v. Nunez*, 236 Ill. 2d 488, 495, 925 N.E.2d 1083, 1087 (2010). The best

indicator in doing so is the plain and ordinary meaning of the language used. *Nunez*, 236 Ill. 2d at 495, 925 N.E.2d at 1087. Moreover, "When the statutory language is clear and unambiguous, it is unnecessary to resort to other aids of interpretation." *Nunez*, 236 Ill. 2d at 495, 925 N.E.2d at 1087.

The broad reach of Rule 402(a)(2) demonstrates the trial judge is obligated – albeit prefaced by a suggestion of "substantial compliance" – to ascertain defendant's understanding of the minimum and maximum penalties accompanying a guilty plea. In assessing a similar claim of error in *People v. Whitfield*, our supreme court noted that "every defendant who enters a plea of guilty has a due process right to be properly and fully admonished." *People v. Whitfield*, 217 Ill. 2d 177, 188, 840 N.E.2d 658, 665 (2005). In the case *sub judice*, the trial judge mentioned only that the offense was a Class 4 felony, that the offense was probationable, that the range of custodial sentences was from 1 to 3 years, and that a one-year period of mandatory supervised release would be added to any sentence. The court made no mention of the possibility of an order of restitution or even a fine.

Our consideration of what transpired below makes clear that restitution is an indispensable element of the offense. Subsection (d) provides, in part: "[T]he court shall order restitution of all unpaid support payments and may impose the following fines, alone, or in addition to a sentence of imprisonment." 750 ILCS 16/15(d) (West 2006). In turn, the potential fines are dependent on several factors depending on the duration and amount of the arrearage. See, *e.g.*, 750 ILCS 16/15(d)(3) (West 2006). Additionally, the language of subsection (e) of the statute repeats that restitution "shall be ordered." 750 ILCS 16/15(e) (West 2006).

13

Consequently, it is clear that restitution is an aspect of the penalty to be imposed upon conviction.

Although a restitution order imposed under the statute could be viewed as nothing more than an extension of a defendant's existing, and possibly continuing, obligation, the statute clearly establishes that probation, imprisonment, or fines – alone or in conjunction – are not contemplated as the sole punishment to be imposed. Moreover, it is clear a defendant cannot satisfy the terms of a sentence under this statute without making restitution for "the total unpaid support obligation as it existed at the time of sentencing." 750 ILCS 16/15(e) (West 2006).

Mindful of our conclusion that restitution is an integral component of any sentence imposed under the subject statute, we conclude the trial judge erred in failing to admonish defendant as to that requirement. In the present case, defendant entered a blind plea. As a result, he put himself at the mercy of the court to sentence him. Consequently, it was incumbent upon the court to advise defendant fully of the minimum and maximum obligations he would incur to satisfy the judgment. In the case *sub judice*, it is clear defendant was not apprised of the full measure of the contemplated penalties. Notably, the insufficiency of the trial judge's admonitions was not limited to the issue of restitution. As noted, the imposition of a fine was, equally, a very real possibility under the statute. See 750 ILCS 16/15(e) (West 2006). Yet, the record reveals no mention of a fine as a possible sentencing component.

Having determined the trial court erred, we turn now to the matter of forfeiture. Here, we discern two interrelated bases upon which defendant can overcome forfeiture. First, we perceive that the error in the present case is clear and obvious and that "the error is so serious that the

defendant was denied a substantial right, and thus a fair trial." *McLaurin*, 235 Ill. 2d at 489, 922 N.E.2d at 351, citing *Piatkowski*, 225 Ill. 2d at 565, 870 N.E.2d at 411. Second, we find that, based upon the pronouncement of our supreme court in *Whitfield* that "every defendant who enters a plea of guilty has a due process right to be properly and fully admonished" (*Whitfield*, 217 Ill. 2d at 188, 840 N.E.2d at 665), hence defendant was deprived of a substantial right. Moreover, we find defendant's failure to object can be excused based upon the language of Rule 402, requiring that trial courts not accept a plea of guilty without admonishing the defendant about its consequences and ascertaining his or her understanding. 177 Ill. 2d R. 402(a). Quite frankly, the language of the rule places the obligation of admonishing the defendant upon the court. As our supreme court observed in *Whitfield*, an opposite conclusion "would place the onus on defendant to ensure his own admonishment in accord with due process." *Whitfield*, 217 Ill. 2d at 188, 840 N.E.2d at 666. Therefore, under the plain-error doctrine or the similar rule recited in *Whitfield*, we can resolve defendant's claim of error.

As noted, defendant was inadequately admonished as to the full extent of the penalties available to the trial judge in sentencing. Without a full expression of those penalties, any defendant in the same position could reasonably conclude that the possible range of sentences would include only probation or one to three years' imprisonment and a term of mandatory supervised release. In effect, a defendant could reasonably conclude his decision to plead guilty would subject him to those penalties in lieu of having to pay his back the arrearage. Such an outcome would be manifestly contrary to the legislative intent, whereby restitution is mandated by the plain language of the statute. 750 ILCS 16/15 (West 2006).

1-09-0418

The State maintains that defendant was not punished by the restitution order because he was already legally obligated to pay that amount by the civil court's existing order. The State's position finds support in certain federal cases interpreting a similar federal statute. However, we find it unnecessary to run the gauntlet of federal decisional law.

The language of the supreme court rule and the statute at issue both persuade us that the issue does not refine itself to whether restitution is punishment. Rather, the question to be resolved requires us to determine whether defendant was advised of and understood the consequences of his plea of guilty, an essential component of due process. *People v. Seyferlich*, 398 Ill. App. 3d 989, 991, 924 N.E.2d 1212, 1214 (2010). As noted, defendant could clearly misinterpret the admonishment he received as removing restitution from the table. Given that the statute, implicitly prohibits such an outcome, the trial court was required to admonish defendant of the spectrum of potential consequences of his plea, including restitution. We find support for this conclusion by a reasonable extension of the existing language of Rule 402(a)(2), which provides the admonishments "includ[e], when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences." 177 Ill. 2d R. 402(a)(2). While the restitution order entered in the civil court was not a "prior conviction," it was a prior matter, the substance of which would inevitably impact defendant's ultimate penalty. Nevertheless, restitution, along with future compliance with child support orders, is manifestly the primary objective of the statute. Furthermore, a defendant whose sentence included an order of restitution could not satisfy that sentence without fulfilling that obligation as well. Hence, restitution is a component of any sentence – whether minimum or maximum – that a defendant

16

would have to serve if convicted under this statute. Therefore, the trial court was required to address that obligation before accepting defendant's guilty plea.

Because defendant was not properly admonished, we vacate the court's judgment and allow the defendant to withdraw his plea of guilty and to plead anew. In light of the foregoing conclusion, it is unnecessary to fully address all of the additional issues raised by defendant. However, we will briefly address those issues likely to recur on remand.

Notably, defendant has asserted challenges to the trial court's compliance with Supreme Court Rules 604(d) and 605(b)(2), insofar as they relate to his indigency, representation, and the required contents of a postplea motion. As this issue again concerns interpretation of a supreme court rule, our review is *de novo*. *Robidoux*, 201 Ill. 2d at 332, 775 N.E.2d at 992.

Rule 604(d) provides:

"(d) Appeal by Defendant from a Judgment Entered upon a Plea of Guilty. No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment. *** The motion shall be in writing and shall state the grounds therefor. *** The trial court shall then determine whether the defendant is represented by counsel, and if the defendant is indigent and desires counsel, the trial court shall appoint counsel. *** The motion shall be heard promptly, and if allowed, the trial court shall modify the sentence or vacate the judgment and permit the

17

1-09-0418

defendant to withdraw the plea of guilty and plead anew." 210 Ill. 2d R. 604(d).

Rule 605(b)(2) mandates, in relevant part:

"(b) On Judgment and Sentence Entered on a Plea of Guilty.  In all cases in which a judgment is entered upon a plea of guilty, *** at the time of imposing sentence, the trial court shall advise the defendant substantially as follows:

(1) that the defendant has a right to appeal;

(2) that prior to taking an appeal the defendant must file in the trial court, within 30 days of the date on which sentence is imposed, a written motion asking to have the trial court reconsider the sentence or to have the judgment vacated and for leave to withdraw the plea of guilty, setting forth the grounds for the motion;

(3) that if the motion is allowed, the sentence will be modified or the plea of guilty, sentence and judgment will be vacated and a trial date will be set on the charges to which the plea of guilty was made;

***

(5) that if the defendant is indigent, a copy of the transcript of the proceedings at the time of the defendant's plea of guilty and sentence will be provided without cost to the defendant and counsel will be appointed to assist the defendant

18

with the preparation of the motions[.]" 210 Ill. 2d R. 605(b).

Our review of these sections in juxtaposition to the admonitions given to defendant convinces us that the trial court failed to comply with these rules. We are reminded of the oft-cited principles that the rules promulgated by our supreme court have the force of law, are not aspirational or suggestive, and are presumed to be adhered to as written. *Bright v. Dicke*, 166 Ill. 2d 204, 210, 652 N.E.2d 275, 277-78 (1995).

The State's response focuses upon whether defendant was, in fact, indigent and whether he would thereby be entitled to counsel. Although the cases relied upon by the State stand for the propositions asserted, they do not, individually or collectively, address the precise issue presented. In the proceedings below, defendant filed a *pro se* postplea motion concerning, *inter alia*, his sentence. Unquestionably, this motion fell within the contemplation of Rule 604(d) nor does the State argue otherwise. Disturbingly, the record reveals that defendant was neither present nor represented by counsel at the hearing on his motion.

A cursory review of Rule 604(d) yields the unmistakable conclusion that the absence of defendant precluded the trial judge from performing the duties imposed by this rule. The rule requires that, "The trial court shall then determine whether the defendant is represented by counsel, and if the defendant is indigent and desires counsel, the trial court shall appoint counsel." 210 Ill. 2d R. 604(d). Although a defendant could conceivably include these issues in a *pro se* postplea motion, defendant did not elect to do so here. Moreover, without the defendant's presence the trial judge could not ascertain whether he was indigent or desired counsel. The State substantially reiterates the evidence adduced during the plea and sentencing to support its

position that defendant was not indigent. However, that information did not relate to defendant's financial status at the time of the postplea hearing. Defendant's status was not ascertained nor was his desire for counsel probed. Consequently, the trial judge failed to comply with the dictates of Rule 604(d).

We find equally unsettling the court's lack of adherence to the requirement of Rule 605(b)(2). Although parts of the rule were addressed in the admonishments given to defendant, the full measure of the rule, as it related particularly to defendant, was simply not addressed. While we cannot predict what will transpire on remand, pursuant to the principle in *Bright*, we offer this reminder of the importance of complying with the rules of our supreme court. Compliance with the rules is, ultimately, beneficial to all involved as it reduces the likelihood of issues such as these arising on appeal.

We next consider defendant's contention that the trial court lacked authority to enter a restitution order for amounts accrued prior to the effective date of the offense charged. A review of the child support statute, specifically subsection (e), persuades that there is an order of primacy of payment on the part of a child support obligor. Subsection (e) provides: "Restitution shall be ordered in an amount equal to the total unpaid support obligation as it existed at the time of sentencing. Any amounts paid by the obligor shall be allocated first to current support and then to restitution ordered and then to fines imposed under this Section." 750 ILCS 16/15(e) (West 2006).

Clearly, any restitution order must necessarily be calculated based upon defendant's unpaid support obligation at that point. As noted, the restitution order entered below did not

balance with the other amounts, specifically as to the offset from the exoneration of defendant's bond. Therefore, it will be necessary to establish the precise value of the amounts paid by defendant since the entry of the support order in the civil court. Without establishing these values, it will be impossible to determine what time period is encompassed by the restitution order – that is, whether the arrearage actually predates the effective date of the Non-Support Punishment Act. For example, if the amounts paid over time were sufficient to satisfy the amounts due and owing since the entry of the support order, then any *ex post facto* concerns – real or supposed – will be obviated.

Consequently, only when an accounting of defendant's payments is conducted consistent with the ordering provided in subsection (e) (750 ILCS 16/15(e) (West 2006)) will the purported constitutional question become relevant. Notably, though, the provisions of section 15 of the Non-Support Punishment Act apparently contemplate amounts due prior to the effective date. Otherwise, the offense would not be functional until enough time passed for a defendant to fall under its terms. This seems an illogical result. Yet, we will leave it to the trial court to fully explore this issue on remand.

Alternatively, defendant argues that we must vacate the restitution order because requiring payment for unpaid support predating the effective date of the enactment violates *ex post facto* principles. A law violates the *ex post facto* doctrine when it:

> "(1) makes criminal and punishable an act innocent when done; (2) aggravates a
> crime, or makes it greater than it was when committed; (3) increases the
> punishment for a crime and applies the increase to crimes committed before the

enactment of the law; or (4) alters the rules of evidence to require less or different evidence than required when the crime was committed." *People v. Leonard*, 391 Ill. App. 3d 926, 931, 911 N.E.2d 403, 408 (2009), citing *People v. Morgan*, 377 Ill. App. 3d 821, 823, 881 N.E.2d 507, 508-09 (2007).

In the case at bar, defendant contends the restitution order violates *ex post facto* principles because it includes amounts accrued prior to the effective date of the Non-Support Punishment Act.

As an initial matter, we are guided by the fundamental principle that we should refrain from deciding a case on a constitutional basis when a nonconstitutional basis is available. *People v. Hampton*, 225 Ill. 2d 238, 243, 867 N.E.2d 957, 960 (2007). The Non-Support Punishment Act was enacted by virtue of Public Act 91-0613, effective October 1, 1999, which repealed the Non-Support of Spouse and Children Act (750 ILCS 15/1 *et seq*. (West 1998)). Pub. Act 91-0613, eff. October 1, 1999 (repealing 750 ILCS 15/1 *et seq.* (West 1998)). The Non-Support of Spouse and Children Act made the neglect of or refusal to pay support or maintenance a Class A misdemeanor. 750 ILCS 15/1(a) (West 1998), repealed by Pub. Act 91-0613, eff. October 1, 1999. Clearly, the prior act criminalized the same conduct as the Non-Support Punishment Act. However, the Non-Support Punishment Act provides a wider range of potentially culpable conduct, as well as sentences ranging from a Class A misdemeanor to a Class 4 felony, along with provisions for fines and restitution. 750 ILCS 16/15 (West 2006). These changes do serve, under certain circumstances, to make the offense greater or increase the punishment for a violation. Consequently, there exists the potential for violations of the *ex post facto* principle.

22

Yet, defendant does not challenge the felony conviction or his custodial sentence on an *ex post facto* basis. Likewise, he cannot properly challenge the entire restitution order. There was ample evidence in the record to support a finding of culpability under the statute for both the amount of the arrearage and the duration of nonpayment. See 750 ILCS 16/15(a)(4) (West 2006) ("the obligation has remained unpaid for a period longer than one year, or is in arrears in an amount greater than $20,000, and the person has the ability to provide the support"). Unquestionably, defendant amassed an arrearage that remained unpaid for over a year and totaling well over $20,000 between October 1, 1999, and April 12, 2007, as provided in the indictment. Defendant's challenge, essentially, is that to the extent the restitution order includes amounts accrued prior to the effective date of the Non-Support Payment Act, it violates *ex post facto* principles.

As noted, the restitution order is a consequence of defendant's guilty plea and, inherently, part of the punishment imposed. Consequently, it is possible that amount was impacted by nonpayments occurring prior to October 1, 1999. However, based upon the record before us, we cannot make a determination whether this indeed occurred. On remand, the trial court is directed to ascertain a full accounting of the chronology of the arrearage, as well as the credits due by virtue of defendant's payments over time, in crafting a restitution order consistent with the Non-Support Punishment Act and not violative of *ex post facto* principles.

Defendant additionally contends that the restitution order entered by the trial court was "deficient because it fail[ed] to set the manner and time frame for repayment." This claim is meritless. Restitution is an integral part of defendant's sentence and represents a potentially

ongoing obligation on his part. Section 15(e) establishes a basic order for the application of amounts paid. 750 ILCS 16/15(e) (West 2006). However, this provision is silent on the manner or time frame for repayment. Therefore, a restitution order entered without these considerations is entirely proper and comports with the plain language of the statute. To conclude otherwise would be to impose an obligation not envisioned by the legislature. We decline the invitation to do so. Defendants must pay restitution and be given credit toward their support obligations and arrearage as provided by the statute. Their obligation ends when the underlying order is satisfied temporally, financially, and otherwise.

For the foregoing reasons, we vacate the judgment of the circuit court of Cook County and remand the matter for further proceedings consistent with this opinion.

Reversed and remanded with directions.

FITZGERALD SMITH, P.J., with HOWSE, J., concur.

1-09-0418

| | |
|---|---|
| Please Use Following Form:<br><br>Complete TITLE of Case | THE PEOPLE OF THE STATE OF ILLINOIS,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>LEE WIGOD,<br><br>Defendant-Appellant. |
| Docket No.<br><br>COURT<br><br>Opinion Filed | No. 1-09-0418<br>Appellate Court of Illinois<br>First District, FIFTH Division<br><br>December 3, 2010<br>(Give month, day and year) |
| JUSTICES | JUSTICE TOOMIN delivered the opinion of the court:<br><br>FITZGERALD SMITH, P.J., with HOWSE, J.    concur [s]<br><br>dissent[s] |
| APPEAL from the Circuit Ct. of Cook County, Chancery Div. | Lower Court and Trial Judge(s) in form indicated in the margin:<br><br>The Honorable   William G. Lacy, Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>Attorneys for Plaintiff-Appellee-People of the State of Illinois:  Anita Alvarez<br>State's Attorney<br>County of Cook<br>Room 309-Richard J. Daley Center,<br>Chicago, IL 60602<br><br>Of counsel: Alan Spellberg, Kyle Berger (senior law student at the Chicago-Kent College of Law)<br><br>Attorneys for Defendant-Appellant:  MICHAEL J. PELLETIER<br>State Appellate Defender<br><br>ALAN D. GOLDBERG<br>Deputy Defender<br><br>LINDSEY J. ANDERSON |

Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, IL 60601
312/814-5472