NOTICE

Decision filed 08/19/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230385-U

NO. 5-23-0385

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Perry County. |
| | ) | |
| v. | ) | No. 21-CF-20 |
| | ) | |
| TIMOTHY E. HEDRICK, | ) | Honorable |
| | ) | James W. Campanella, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Boie and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's conviction and sentence where he forfeited his contentions on appeal and the evidence is not closely balanced to warrant review under plain error or ineffective assistance of counsel. The trial court did not abuse its discretion in sentencing defendant to a 55-year prison term.

¶ 2    Defendant, Timothy E. Hedrick, appeals his conviction and sentence for five counts of possession of child pornography involving a child under the age of 13 (720 ILCS 5/11-20.1(a)(6) (West 2020)) and three counts of reproduction of child pornography involving a child under the age of 13 (*id.* § 11-20.1(a)(2)). The trial court sentenced defendant to consecutive sentences of 5 years in prison on each possession count and 10 years in prison on each reproduction count for an aggregate sentence of 55 years in prison followed by 3 years to life of mandatory supervised release (MSR). Defendant contends that the trial court erred when it "improperly interrupted [defendant's]

1

closing argument to define reasonable doubt" and "permitted the State to improperly argue that [defendant] could be convicted on an accountability theory." Defendant also argues that the court erred by sentencing defendant to an excessive 55 years where defendant had no prior convictions and "was unlikely to commit further crimes in the future." We affirm.

¶ 3                                    I. Background

¶ 4      Defendant's jury trial commenced on February 15, 2023. Jared McDermet, an investigator with the Illinois Attorney General's Office, testified that he investigated two cyber tips from Google in November 2020. Investigator McDermet explained that the National Center for Missing and Exploited Children (NCMEC) generated a cyber tip report when an electronic service provider or social media site reported suspicious activity, such as possible child pornography or exploitation. Specific to this case, Investigator McDermet received a report from NCMEC which indicated that Google identified possible images of child pornography connected to an account associated with defendant.[1] Investigator McDermet subsequently served a search warrant on Google to preserve records relating to the report and associated account. Google provided account and subscriber information, IP addresses, unique device identifiers, location data, the images pertaining to the NCMEC tip, and defendant's emails. Google also provided the unique International Mobile Equipment Identity (IMEI) number associated with defendant—an Android Samsung Galaxy J7 Crown cell phone, which was connected with two more emails associated with defendant.[2]

¶ 5      After confirming defendant's identity and location, Investigator McDermet executed a search warrant at defendant's address on March 3, 2021, along with Special Investigator Amanda

---

[1]The account listed a username of "Timothy Hedrick" with email address "timothyhedrick28@gmail.com" and phone number 573-846-6015.

[2]The email addresses were "hedricktim4@gmail.com" and "timothyhedrick28@gmail.com."

Wimmersberg and Jim Stapleton, a digital forensic examiner. At the time of the search warrant, defendant, defendant's partner Kim Denton, and a two-year-old female were in the residence. After officers arrived, defendant "made some comments that he was receiving weird messages from Google and he also mentioned something about a possible virus on his phone." Investigator McDermet located a Samsung Galaxy J7 Crown cell phone on the couch. Defendant and Denton identified that the device belonged to defendant, and defendant entered his pin passcode to unlock the device. Investigator McDermet then handed the phone to Examiner Stapleton, who indicated that the phone contained a secure folder protected by a swipe-pattern lock.

¶ 6      After Investigator McDermet and Special Investigator Wimmersberg arrested defendant, they conducted a recorded interview with defendant. During the course of the two-hour interview, defendant identified his phone number. Defendant stated that Google disabled three or four of his email accounts, which Investigator McDermet found notable, given that Google generally disabled accounts that violate its terms of service. Investigator McDermet informed defendant that Google reported several images of child pornography on defendant's Google account. Defendant initially denied that he searched, viewed, or downloaded child pornography. Defendant also denied having any knowledge of a secure folder on his cell phone. Instead, defendant told Investigator McDermet he accidentally took screenshots when attempting to back out of a website after he "got on to this website from another website from another website." Investigator McDermet testified that taking a screenshot on a cell phone usually required a deliberate combination of simultaneous button presses such as "hold[ing] down the home button and *** [pressing] the volume up or the power button."

¶ 7      Defendant told the investigators that a man named Jonathan Lee lived with defendant and Denton for a year or a year and a half before moving out. Defendant explained that Lee had access

3

to, or used, his cell phone, but the investigators told defendant that Lee moved out several months before the cyber tips were reported. Defendant also stated that his brother, Jimmy Hedrick, used his cell phone a few times, and that Mathew Barnes, an individual who lived with defendant, accessed his cell phone. Defendant also shared that he kicked Barnes out of his house after learning Barnes was a registered sex offender.

¶ 8 After investigators questioned defendant about the secure folder again, defendant eventually stated that "there would be pictures of some [female] friends" in the folder. Defendant then agreed to open the secure folder. Special Investigator Wimmersberg left the interview room to retrieve the cell phone from Examiner Stapleton. Once Special Investigator Wimmersberg returned, defendant successfully opened the secure folder with a swipe-pattern code. The investigators left the room to deliver the device back to Examiner Stapleton who performed an extraction of the device's data.

¶ 9 Investigator McDermet further testified that he examined the extracted data. He observed emails connected to defendant's email address that contained child pornography images. The email information matched the identifiers of the Google records and Samsung device. Investigator McDermet submitted a new subpoena to Google for information related to the hedricktim4@gmail.com account. The additional records were consistent with the make, model, and IMEI number of the device recovered from defendant's residence. A January 21, 2021, email from the hedricktim4@gmail.com address to itself had 77 images attached to it, two of which constituted child pornography, and a picture of a crib that investigators photographed during the search of defendant's home. Another similar email sent from and to the email on February 4, 2021, had child pornography images attached. Investigator McDermet further testified that certain website domain names were associated with child pornography sites, and several screenshots

extracted from defendant's device contained these domain names at the top of the child pornography images.

¶ 10     Examiner Jim Stapleton with the Illinois Attorney General's Office testified that he accompanied Investigator McDermet and Special Investigator Wimmersberg to defendant's residence during the March 3, 2021, search warrant execution. Examiner Stapleton took custody of defendant's Samsung Galaxy J7 Crown cell phone. He then performed a data extraction of the device after defendant unlocked the secure folder with the swipe pattern. Examiner Stapleton explained several deliberate steps were required to set up and password protect a secure folder, and that anything within the secure folder would have to be purposefully placed in it.

¶ 11     Examiner Stapleton identified several images and screenshots of child pornography within the secure folder, as well as images contained in the January 21, 2021, and February 4, 2021, emails. Examiner Stapleton further testified that defendant's device contained screenshots, bookmarks, and web history that showed many website domain names associated with child pornography, which included 15 website addresses or domain names that were collectively visited well over 78 times.

¶ 12     Examiner Stapleton also testified that he found messages between defendant and Barnes from July 31, 2020, to August 4, 2020, mostly relating to "conversation about money and then conversation about meeting or visiting." Examiner Stapleton also located a bookmark on defendant's device created September 15, 2020, that read "Mathew L. Barnes, sex offender in Ellis Grove, Illinois 62241, ILE16A2425."

¶ 13     Kim Denton testified that she and defendant were in a relationship for five and half years and lived together until April 2021. She testified that Barnes lived with them "on and off, about June or July [of 2020]" and stopped living with them August 1, 2020. She recalled defendant

providing his phone to people, including Barnes, to make calls. She did not recall defendant lending his phone to people for other uses.

¶ 14 Jimmy Hedrick, defendant's brother, testified that he saw defendant and Barnes using defendant's cell phone on "[m]any occasions." Debra Hedrick, defendant's mother, testified that she saw Barnes with defendant's cell phone "five [or] six times" around "July or August of 2020."

¶ 15 During defense counsel's closing argument, the trial court interrupted, and the following exchange took place:

> "MR. STERN [(DEFENSE COUNSEL)]: *** [Defendant] doesn't have to prove anything unless the State shows he is guilty beyond all reasonable doubt.
>
> THE COURT: Let me stop you for just a second. Beyond a reasonable doubt, not all reasonable doubt. And that is very clear. So I do have to interject on my own the standard is beyond a reasonable doubt, not beyond any reasonable doubt. Do we understand the difference? Thank you. You may proceed, sir.
>
> DEFENSE COUNSEL: Thank you, your Honor."

¶ 16 During the State's rebuttal closing argument, defense counsel objected, and the following exchange took place:

> "MR. KULKARNI [(THE STATE)]: *** But then second, why would [Barnes] need to be walking around with the defendant's phone at all, right, obviously putting himself at risk of violating sex offender registration, which the defendant did seem to know a fair amount about the consequences of a sex offender during his interview.
>
> MR. STERN [(DEFENSE COUNSEL)]: Your Honor, I would object. There is an implication that [defendant] *** seemed to have a lot of knowledge of that and I don't know how that has any relevance."

¶ 17 Following instruction and deliberation, the jury returned a guilty verdict on all eight charges—five counts of possession of child pornography and three counts of reproduction of child pornography.

¶ 18     The trial court held defendant's sentencing hearing on March 23, 2023. The court noted that defendant faced up to 120 years in the Illinois Department of Corrections, mandatory 3 years to life of MSR, and registration as a sex offender.

¶ 19     Examiner Stapleton testified that, in addition to the eight charged images, he found an additional 422 files of child pornography on defendant's phone. Investigator McDermet testified that defendant created and used an alias Facebook account, in violation of the terms of his pretrial release. He further testified that he spoke to Kristina Burgess, the mother of H.H., whom Burgess indicated is a daughter in common between defendant and her, and B.H., Burgess's female child. Burgess indicated to McDermet that she took B.H. to the Perry/Jackson Child Advocacy Center for an interview.

¶ 20     Whitney Melton, a forensic interviewer at the Perry/Jackson Child Advocacy Center, testified at defendant's sentencing. She testified that on March 15, 2021, she conducted a forensic interview of B.H. The State played an edited recording of the interview for the court. B.H. indicated she was 11 years old and in sixth grade. She explained that defendant kept "walking in" on her and H.H. while they were getting dressed. She described her bedroom doors as swinging, saloon-style doors with slats. She said that she wrapped the door in plastic because she could see defendant's phone light up through the door, possibly taking pictures. When she was seven or eight years old, defendant asked her to take a picture of herself without clothes on, but B.H. said no and told her mom. Also, around that time, B.H. said defendant repeatedly sent her a video through Facebook Messenger of a male and female having sex, and defendant asked her if she liked the video.

¶ 21     Defendant spoke in allocution wherein he denied all culpability and claimed that his rights had been violated. He denied knowledge of screenshots, denied using an alias Facebook account

7

during pretrial release, and stated that B.H. is "my daughter but biologically she is not, if you know what I am getting at." The State asked for a sentence of 75 years, and defense counsel requested a sentence of 21 years.

¶ 22    In aggravation, the trial court noted that defendant's conduct caused or threatened serious harm. The court determined defendant's sentence was necessary to deter others and noted that defendant's phone contained more than 100 images of child pornography. The court found that defendant qualified for a statutory aggravation factor because "a child was engaged in, solicited for, depicted in, or posed in an[ ] act of sexual penetration" in some of the child pornography images. 730 ILCS 5/5-5-3.2(26) (West 2020).

¶ 23    The trial court found it mitigating that defendant "never actually caused any serious physical harm," had no history of prior delinquency, and was "unlikely to commit another crime." The court considered the presentence investigation report and defendant's statement in allocution, which the court considered an "unequivocal denial of any knowledge or voluntariness" for his conduct. The court also considered arguments of counsel, aggravating and mitigating factors, and the history and character of defendant. The court pronounced its sentence, leading to the following exchange:

> "THE COURT: Having due regard for the seriousness of the offense and keeping in mind the objective of restoring the defendant to useful citizenship, I find that the defendant, while being eligible for probation on the first five Class 2 [f]elonies, is not an appropriate candidate for probation and thereby sentence him to 3 years in the Illinois Department of Corrections on each of those five counts of possession of child pornography.
>    With regard to the other three mandatory DOC sentences of between 6 and 30, I hereby sentence the defendant to 10 years on each count for a total of 30 years. Adding the two together, we will have a total of 25 and 30, which of course comes to 55 years at day-for-day.
>
> MR. KULKARNI [(THE STATE)]: Judge, respectfully, I believe—
>
> THE COURT: Did I misspeak?

8

[THE STATE]: I believe it's 5 years each on the Class 2's, that would be 15 years, and then plus 30 total—

THE COURT: You have five Class 2's.

[THE STATE]: Yes.

THE COURT: At 5 years, that's 25.

[THE STATE]: Your Honor said 3 years.

THE COURT: I thought I might have misspoke. That's 5 years. So 5 times 5. So it's 25. 3 times 10 is 30. That's 55."

¶ 24 The trial court sentenced defendant to 5 years on each of the Class 2 felony possession counts and 10 years each on the 3 Class X felony reproduction counts, followed by 3 years to life MSR, for an aggregate sentence of 55 years' imprisonment. Defendant filed a posttrial motion and a motion to reduce sentence. Defendant's motions contended that the State argued defendant could be convicted without proof of actually viewing the pornography, the State presented prejudicial other child pornography crimes evidence, the court denied one of defendant's peremptory juror challenges, the prosecution argued that defendant "seem[ed] to know a lot about restrictions on convicted sex offenders implying that [defendant] was one," the State failed to prove defendant guilty beyond a reasonable doubt, and that defendant's sentence was excessive. On May 5, 2023, the trial court denied both motions. Defendant timely appealed.

¶ 25                                    II. Analysis

¶ 26 On appeal, defendant contends the trial court erred when it "improperly interrupted [defendant's] closing argument to define reasonable doubt" and "permitted the State to improperly argue that [defendant] could be convicted on an accountability theory." Defendant also argues that the court erred by sentencing defendant to 55 years where defendant had no prior convictions and "was unlikely to commit further crimes in the future." For the reasons detailed below, we find

9

defendant's contentions on appeal forfeited. Defendant is also precluded from claims of plain error or ineffective assistance of counsel because the evidence is not closely balanced. Therefore, we affirm.

¶ 27    First, defendant argues the trial court inappropriately interrupted defense counsel's closing argument and then improperly defined reasonable doubt for the jury. Defendant has forfeited this issue. "To preserve a purported error for appellate review, a defendant must object to the error at trial and raise the error in a posttrial motion." *People v. Williams*, 2022 IL 126918, ¶ 48 (citing *People v. Sebby*, 2017 IL 119445, ¶ 48). "Failure to do either results in forfeiture of such review." *Id.* Defense counsel did not object to the trial court's interjection during closing argument. Instead, defense counsel simply replied, "Thank you, Your Honor." Additionally, defendant did not raise this issue in his posttrial motion. Therefore, this issue is forfeited.

¶ 28    Defendant asks this court to excuse forfeiture under *People v. Sprinkle*, 27 Ill. 2d 398 (1963). In *Sprinkle*, our supreme court relaxed the requirement for timely and proper objections and preservations of rulings "where the basis for the objection is the conduct of the trial judge" (*id.* at 401), and therefore the objection " 'would have fallen on deaf ears.' " *People v. McLaurin*, 235 Ill. 2d 478, 488 (2009) (quoting *People v. Davis*, 378 Ill. App. 3d 1, 10 (2007)). However, this failure to object or preserve rulings is only excused under "extraordinary circumstances, such as when a trial judge makes inappropriate remarks to a jury [citation] or relies on social commentary, rather than evidence, in sentencing a defendant to death [citation]." *Id*. This *Sprinkle* relaxation has been applied in instances of a trial judge making racially derogatory or biased remarks (*People v. Tyner*, 30 Ill. 2d 101, 105 (1964)), a trial judge's expression of sympathy for a victim's grandmother (*People v. Sims*, 192 Ill. 2d 592 (2000)), or in capital cases (*People v. Dameron*, 196

Ill. 2d 156, 171 (2001)). *Sprinkle* is "seldom applied *** to noncapital cases *** except in the most compelling of situations." *McLaurin*, 235 Ill. 2d at 488.

¶ 29 We do not find such a compelling situation or extraordinary circumstance here. The trial court interjected only one time to make the minor correction of "*any* reasonable doubt" to "*a* reasonable doubt." (Emphasis added.) We disagree with defendant's contention that the trial court improperly defined "reasonable doubt" for the jury. The brief interruption does not rise to the "compelling" or "extraordinary" level explored in *Sprinkle* or *McLaurin*. No contentious exchange occurred between counsel and the court, and the court's comment constitutes neither an inappropriate or biased remark nor improper social commentary. Regardless of this exchange, the jury received proper instruction on the applicable standard when the trial court instructed the jury with Illinois Pattern Jury Instructions, Criminal, No. 2.03, wherein the court read that a defendant's presumption of innocence "is not overcome unless from all the evidence in this case you are convinced beyond a reasonable doubt that he is guilty."

¶ 30 Defendant next contends that this issue is reviewable under the first prong of the plain-error doctrine, which provides for review where the evidence is "so closely balanced that the error alone threatened to tip the scales of justice against [defendant]." *Sebby*, 2017 IL 119445, ¶ 48. Alternatively, defendant argues that defense counsel's failure to object and include the issue in the posttrial motion constituted ineffective assistance of counsel. See *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We find that the outcome for defendant would be the same under either plain-error review or an ineffective assistance analysis. See *People v. White*, 2011 IL 109689, ¶¶ 132-34.

¶ 31 "Plain-error review under the closely-balanced-evidence prong of plain error is similar to an analysis for ineffective assistance of counsel based on evidentiary error insofar

11

as a defendant in either case must show he was prejudiced: that the evidence is so closely balanced that the alleged error alone would tip the scales of justice against him, *i.e.*, that the verdict 'may have resulted from the error and not the evidence' properly adduced at trial (see *People v. Herron*, 215 Ill. 2d 167, 178, (2005) (plain error)); or that there was a 'reasonable probability' of a different result had the evidence in question been excluded (see *Strickland*, 466 U.S. at 694)." *White*, 2011 IL 109689, ¶ 133.

¶ 32    Here, the evidence against defendant was not closely balanced. The cyber tip reports were associated with defendant's cell phone number and several emails containing his name. Investigators found the images on defendant's device that he unlocked using his passcode. Defendant initially denied knowledge of a secure folder on his cell phone but then told investigators that it contained pictures of "[female] friends" and entered the unique swipe-pattern code to unlock it. After gaining access to defendant's cell phone, Examiner Stapleton confirmed that defendant's cell phone contained internet history and saved bookmarks to websites known to display child pornography. The evidence also showed that defendant sent emails to himself with child pornography images attached. Moreover, several screenshots found on defendant's device contained domain names for websites that contained child pornography, and Investigator McDermet explained the deliberate sequence of actions needed to take a screenshot, despite defendant's claims he may have "accidentally" taken the screenshots when attempting to "back out" of the website. This, among other evidence and testimony presented to the jury, precludes any claim that the evidence was closely balanced such that, as he claims, "the court's improper statement may have been the deciding factor in an otherwise close case." The evidence against defendant is such that he cannot show prejudice for purposes of either plain error or ineffective assistance. *Id*. Therefore, there is "no reason to go further for purposes of either an ineffective

assistance analysis or one founded upon the closely balanced prong of plain error," as both analyses are evidence-dependent and result-oriented. *Id.* ¶ 134.

¶ 33   Defendant also asks us to review this issue under second-prong plain error. We decline to do so where defendant's only argument pertaining to this issue is contained in just one sentence in his reply brief: "The issue is reviewable under the second prong of plain error because it implicates a defendant's due process right to a fair trial insofar as it involves the very burden that the State had to meet in order to establish guilt itself. [Citations.]" As a reviewing court, we are entitled to have the issues clearly defined, relevant authority cited, and proper legal arguments presented. *People v. Greer*, 336 Ill. App. 3d 965, 979-80 (2003) (citing *Southwestern Illinois Development Authority v. Vollman*, 235 Ill. App. 3d 32, 38 (1992)). "The appellate court is not simply a depository into which an appealing party may dump the burden of argument and research." *Id.* at 980 (citing *Pecora v. Szabo*, 109 Ill. App. 3d 824, 825-26 (1982)). We decline to review this issue where defendant's argument is one, conclusory sentence.

¶ 34   Next, defendant contends that the trial court erred when it "permitted the State to improperly argue that [defendant] could be convicted on an accountability theory." We agree with the State that this issue is forfeited. At trial, defense counsel objected during the State's rebuttal closing argument: "There is an implication that [defendant] *** seemed to have a lot of knowledge of that and I don't know how that has any relevance." In his posttrial motion, defendant stated: "[D]efendant was prejudiced by the prosecution arguing during closing that the defendant seems to know a lot about restrictions on convicted sex offenders implying that the defendant was one, which is bad enough even if true."

¶ 35   In defense counsel's objection and posttrial motion, defendant takes issue with the State's questioning why Barnes would possess defendant's phone "putting himself at risk of violating sex

13

offender registration, which the defendant did seem to know a fair amount about the consequences of." The statement that defendant takes issue with on appeal, as suggesting a kind of accountability theory, took place after defense counsel's objection and was not included in the posttrial motion. The State argued, "If the defendant was giving him his phone after that, well, that's on defendant now, isn't it?" Defense counsel did not object, did not include this issue in a posttrial motion, and is raising the accountability theory issue for the first time on appeal, therefore we find this issue forfeited.

¶ 36    Defendant, again, contends that, if this issue is forfeited, we should still review it under plain error or ineffective assistance of counsel. For the reasons we detailed above, we decline to do so. The evidence against defendant is not closely balanced such that he cannot show prejudice for purposes of either plain error or ineffective assistance. *White*, 2011 IL 109689, ¶ 133.

¶ 37    Next, defendant argues that the trial court abused its discretion when it calculated defendant's sentence, "misspoke," and then corrected its calculation. We find defendant forfeited his argument regarding the court's immediate self-correction. Defendant failed to object and raise the issue in his motion to reconsider sentence. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010) ("to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required"). Defendant, again, invites us to overlook forfeiture under plain error or ineffective assistance of counsel. "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.* (citing *People v. Hall*, 195 Ill. 2d 1, 18 (2000)). Defendant claims "[b]oth prongs of the plain[-] error doctrine are present in this case" because "the evidence was also close regarding [defendant's] sentencing where [defendant] had no prior criminal background and the court found

14

that [defendant] would not re-offend." Defendant claims the second prong is present because "an error in sentencing is also serious as it affects [defendant's] fundamental right to liberty. [Citation.]" As with defendant's first claim of second-prong plain error, we decline to review his second-prong plain-error claim in sentencing. This court is entitled to have the issues and arguments clearly defined with relevant authority cited because this court "is not simply a depository into which an appealing party may dump the burden of argument and research." *Greer*, 336 Ill. App. 3d at 979-80 (citing *Szabo*, 109 Ill. App. 3d at 825-26).

¶ 38    Regarding defendant's claim of first-prong plain error or ineffective assistance of counsel, we find the evidence at sentencing was not closely balanced. Examiner Stapleton testified that he located a total of over 422 images of child pornography on defendant's device and in defendant's accounts. In the recorded interview played for the court, B.H. explained that she had to wrap her bedroom door in plastic to prevent defendant from taking pictures of her getting dressed. B.H. further explained that defendant asked her to take nude pictures of herself and also repeatedly sent her a pornographic video via Facebook Messenger of a male and female having sex, and then asked her if she liked the video. While speaking in allocution, defendant denied any and all responsibility or culpability. The court noted that defendant's conduct caused or threatened serious harm. The court determined defendant's sentence was necessary to deter others and noted that defendant's phone contained more than 100 images of child pornography. The court found that defendant qualified for a statutory aggravation because in some of the child pornography images "a child was engaged in, solicited for, depicted in, or posed in an[ ] act of sexual penetration." 730 ILCS 5/5-5-3.2(26) (West 2020). The court did note that defendant had no prior criminal history and would not likely re-offend. However, these mitigating factors do not render the evidence closely balanced. Because the evidence at the sentencing hearing was not closely balanced, we decline to

15

review defendant's contention of error for first-prong plain error or ineffective assistance of counsel. *White*, 2011 IL 109689, ¶ 13.

¶ 39 Finally, defendant argues that the trial court abused its discretion "due to its excessive length in light of [defendant's] lack of prior criminal background and unlikelihood of re-offending." He notes that the minimum sentence he faced was 33 years, and that such sentence would be "adequate" retribution for the crime and enough to achieve rehabilitation. The State argues that defendant's sentence is "well within statutory limits" and that defendant is essentially asking this court "to reweigh mitigating factors more favorably to him." We agree with the State.

¶ 40 We will not reverse a sentence unless the trial court abused its discretion. *People v. Watkins*, 2023 IL App (5th) 200322, ¶ 41. When the sentencing court follows the statutory limitations and considers all factors in mitigation and aggravation, it "would be difficult to conclude" it abused its discretion. *Id.* ¶ 44. A sentence can only be "construed as excessive if the sentence is 'manifestly disproportionate to the nature of the offense.' " *Id.* (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)). Here, defendant faced a sentence between 33 and 125 years. The court imposed a sentence of 55 years, which is well within the middle of the statutory range. As detailed above, the court properly considered all mitigating and aggravating factors, testimony, reports, and evidence. Where the sentence is well within the statutory range and the court considered all relevant factors, the trial court did not abuse its discretion, and we decline to reweigh the factors and substitute our judgment for that of the trial court. *Id.*

¶ 41                                    III. Conclusion

¶ 42 For the foregoing reasons, we affirm the judgment of the circuit court of Perry County.

¶ 43 Affirmed.